# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **XY, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. W-16-CA-00447-RP** |
| **TRANS OVA GENETICS, LC,** | § | |
| **Defendant.** | § | |

## ORDER

Before the Court are Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). For the reasons stated below Defendant's Motion to Transfer Venue is **GRANTED** and this case is hereby **TRANSFERRED** to the United States District Court of Colorado, Denver Division.[1]

## I. BACKGROUND

This suit involves alleged patent infringement, trade secret misappropriation, and unfair competition. XY, LLC, ("Plaintiff") researches, develops, and commercializes technology for sex selection of non-human mammals, such as cattle and horses. Pl.'s Am. Compl. ¶ 6. Trans Ova Genetics ("Defendant") provides reproductive services to cattle breeders, including embryo transfer and in-vitro fertilization services. *Id.* ¶ 9. On April 16, 2004, Defendant entered into a license agreement with Plaintiff that allowed Defendant to use Plaintiff's proprietary technology (the "License Agreement"). *Id.*

In early 2012, Plaintiff brought a breach of contract as well as various patent infringement claims against Defendant arising out of disputes over the License Agreement which permitted Defendant to use Plaintiff's patented technology. *XY, LLC v. Trans Ova Genetics, LC*, No. 13-CV-0876-WJM-

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

NYW, 2016 WL 1391615, at *16 (D. Colo. Apr. 8, 2016), *on reconsideration in part*, No. 13-CV-0876-WJM-NYW, 2016 WL 6664619 (D. Colo. Nov. 10, 2016) (emphasis added).The court held a three week jury trial commencing on January 25, 2016, and the jury rendered a verdict on February 12, 2016. *Id.* The jury found that Defendant had materially breached the License Agreement before April 16, 2009, and failed to cure the breach by that date. *Id.* Thus, the jury found that the License Agreement expired on April 16, 2009, and any use of Plaintiff's patents or trade secrets by Defendant after that date was unlicensed and unauthorized. *Id.* Because Defendant continued to use Plaintiff's technology after that date, the jury also found that Defendant had willfully infringed ten of Plaintiff's patents. *Id.* As part of the court's final judgment, the court set an ongoing royalty rate to compensate Plaintiff for Defendant's continuing infringement. Specifically, the court ordered:

> XY's Motion to Set an Ongoing Royalty Rate (ECF No. 471) is GRANTED IN PART, and Trans Ova shall pay a rate of 12.5% of all gross receipts for the licensed products *set forth in the parties' prior License Agreement*, with an additional 2% royalty for reverse sorting services, unless the parties reach a separate license agreement which may supersede this ongoing royalty rate without further order of the Court.

*Id.* (emphasis added). The court noted that Defendant effectively admitted its intent to continue to practice Plaintiff's patents, thus necessitating some remedy for further infringement. *Id.* at n. 3.

Plaintiff brought this suit on December 6, 2016. ECF No. 1. Plaintiff alleges that in connection with the Denver suit, Defendant learned that it hired Plaintiff's former employee, Todd Cox. Pl.'s Am. Compl. ¶ 6. Plaintiff alleges that Defendant hired Cox first as a consultant and later as an employee, to obtain non-sperm sorting flow cytometers and convert them into MoFlo SX sperm sorting flow cytometers using Plaintiff's trade secret information.[2] Plaintiff asserts that after the License Agreement terminated in 2009, Defendant continued to use Plaintiff's proprietary technology in its business and

---

[2] Plaintiff contends that this trade secret information includes the identity of parts specific to the MoFlo SX, modifications to the MoFlo general cell sorter and other equipment and parts necessary for making a MoFlo SX sperm sorter, and the process of assembling a MoFlo SX. Pl.'s Am. Compl. ¶ 6.

continued to make and use MoFlo SX sperm sorting flow cytometers to produce sexed semen. *Id.* ¶¶ 11,14. Plaintiff contends that Defendant continues to use MoFlo SX sperm sorting flow cytometers, Plaintiff's protocols, and Plaintiff's other trade secrets and intellectual property without Plaintiff's authorization to produce sexed semen to this day. *Id.* ¶ 12.

On January 31, 2017, Defendant filed its Motion to Dismiss Plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that res judicata bars Plaintiff's claims. *See* ECF No. 14. Plaintiff responded, Defendant replied, and Plaintiff requested leave to file a sur-reply. Also on January 31, 2017, Defendant filed its Motion to Transfer Venue to the District of Colorado pursuant to a forum selection clause contained in a License Agreement. ECF No. 17. Plaintiff responded, Defendant replied, and the Court granted Plaintiff leave to file its sur-reply. The Court will first address Defendant's Motion to Transfer Venue. Because the Court is transferring this case to the District of Colorado, the Court does not reach Defendant's Motion to Dismiss.

## II. THE FORUM SELECTION CLAUSE IS VALID AND ENFORCEABLE.

## A. Legal Standard

### 1. Enforceability of FSCs

When determining whether to transfer a case to another district court pursuant to an FSC, a court must first determine whether the FSC is mandatory or permissive. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016) (*citing Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384–86 (2d Cir. 2007)). Once a court makes this determination, it must then decide whether the FSC applies to the present case. *Id.* This involves two separate inquiries: (1) whether the contract is valid and the FSC is enforceable; and (2) whether the present case falls within the scope of the FSC. *See id.* at 770 ("Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play."); *see also Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 542 (W.D. Tex.

2014) (*citing Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (enforcing a forum-selection clause requires first assessing the clauses' contractual validity and its scope) (other citations omitted)).

The enforceability of an FSC is decided pursuant to federal law. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997). Under federal law, FSCs are presumptively valid and should be enforced unless shown to be unreasonable under the circumstances. *Id.* at 963; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) (enforcing FSC printed on a form passenger ticket); *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, (1972).

An FSC may be considered unreasonable if:

(1)   the incorporation of the FSC into the agreement was the product of fraud and overreaching;

(2)   the party seeking to escape enforcement "will for all practical purposes be deprived his day in court" because of the grave inconvenience or unfairness of the selected forum;

(3)   the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or

(4)   enforcement of the FSC would contravene a strong public policy of the forum state.

*Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016) (internal citations omitted) (emphasis added). The burden of proving unreasonableness is a heavy one. *Plesha v. Ferguson*, 2009 WL 8729579, at *2 (W.D. Tex. Aug. 19, 2009) (*citing Bremen*, 407 U.S. at 12–13, 15, 18). As the party opposing the FSC, Plaintiff has the burden of showing that the clause should not be enforced. *See Atl. Marine*, 134 S. Ct. at 581; *see also Jackson v. Payday Financial, LLC*, 764 F.3d 765, 776 (7th Cir. 2014); *Haynsworth*, 121 F.3d at 962-63.

### 2. Transfer Analysis Under § 1404(a)

For the usual § 1404(a) motion, the court considers various private and public-interest factors.

*Weber*, 811 F.3d at 766–67. The private-interest factors include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The public-interest factors include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.

*Id.* A plaintiff's choice of forum is given "some"—significant but non-determinative—weight. *Weber*, 811 F.3d at 767.

However, "the existence of a mandatory, enforceable FSC dramatically alters this analysis." *Id.* First, a plaintiff's choice of forum "merits no weight;" instead a plaintiff has the burden of establishing that a § 1404(a) transfer is unwarranted. *Id.* Second, the court should not consider the private-interest factors since the parties waive the right to challenge their preselected forum as "inconvenient" once they contracted for a specific forum. *Id.* Rather, the court should consider only public-interest factors. *Id.* Because public-interest factors will rarely defeat a motion to transfer, the practical result is that FSCs should control except in unusual cases. *See id.* ("Cases in which the public-interest factors are sufficiently strong to outweigh a valid FSC will not be common."); *see also Barnett*, 831 F.3d at 308–09 ("[Public–interest] factors justify a refusal to enforce a[n] [FSC] only in "truly exceptional cases.").

**B. Discussion**

The FSC at issue in this case provides:

> The License shall be construed, interpreted, and enforced pursuant to the laws of Colorado, and the parties hereto submit and consent to jurisdiction and venue in Larimer County, Colorado, except to the extent preempted by federal jurisdiction in which case such jurisdiction shall be in the Federal courts of Colorado.

Pl.'s Resp. at 4 (*citing* Ex. 1 to ECF. No. 14 at § 6.3.1 (emphasis added)).

In deciding whether to transfer this case to the U.S. District Court of Colorado, the Court must: (1) determine whether the FSC is mandatory or permissive; (2) whether the FSC applies to the present case and (3) if the FSC is mandatory, valid, and enforceable, then the undersigned will determine whether the public interest factors defeat this Motion to Transfer. Here, the parties do not dispute that the FSC at issue in this case is mandatory. Thus, the Court begins its analysis with determining whether the FSC applies to the present case.

### 1. Does the FSC apply?

When deciding whether the FSC applies to the present case, the Court must make two separate inquiries: (1) whether the contract is valid and the FSC is enforceable; and (2) whether the present case falls within the scope of the FSC. *Weber*, 811 F.3d at 770. The undersigned will address each in turn.

### a. FSC's Enforceability

As an initial matter, Plaintiff argues that issue preclusion prevents Defendant from using a "license" defense to Plaintiff's patent infringement and trade secret misappropriation claims. Pl.'s Resp. at 4. Plaintiff contends that the Colorado jury in the 2012 Litigation decided that Defendant materially breached the License Agreement, the License Agreement expired in April 2009, and the trial court in Colorado entered a final judgment on that verdict. *Id.* (*citing* Ex. 4 to ECF. No. 14). Thus, Plaintiff concludes that Defendant is collaterally estopped from arguing that its alleged post-expiration activities

are protected by the License Agreement. Pl.'s Resp. at 4. However, Defendant is not arguing that its alleged post-expiration activities are protected by the License Agreement; rather, Defendant argues that the Colorado court took into account Defendant's alleged post-expiration activities when ordering Defendant to pay an on-going royalty rate for future infringement. Thus, collateral estoppel in this context does not apply.

Plaintiff further contends that the two cases Defendant cites, *Thome v. Layne* and *Texas Source Group v. CCH*, do not support Defendant's position that the forum selection clause survived the expiration of the License Agreement. The undersigned disagrees.

In *Thome*, the parties had two agreements, a Development Agreement containing a forum selection clause, and a subsequent Purchase Agreement containing an arbitration clause. *Thome v. Layne Energy Sycamore, LLC*, No. 05-CV-02244-PSF-MJW, 2006 WL 1488895* 2 (D. Colo. May 30, 2006). The court analyzed whether the forum selection clause in the earlier agreement or the arbitration clause in the later agreement controlled. *Id.* The court held:

> there is no question here that GLNA agreed to arbitrate "[i]n the event of a dispute" with defendants. *See* Purchase Agreement at § XII. An earlier forum selection clause favoring federal courts in Colorado was clearly terminated by the language of the subsequent Purchase Agreement, which called for termination of the earlier agreement (except as otherwise provided) and contained a clear arbitration clause. *Id.* at §§ V(A), XII; *cf. Advent Electronics, Inc. v. Samsung Semiconductor, Inc.,* 709 F. Supp. 843, 846 (N.D. Ill. 1989) ("In the absence of contractual language expressly or implicitly indicating the contrary, a forum selection clause survives termination of the contract . . . . The intent of the parties as to the continued applicability of a forum selection clause controls.").

*Id.* Thus, rather than *Thome* standing for the proposition that forum selection clauses can and do terminate along with the agreement that contains them, *Thome* holds that forum selection clauses can and do terminate when: (1) the language in a subsequent agreement expressly discusses the termination

of the earlier agreement containing the forum selection clause; and (2) the subsequent agreement contains a clear arbitration clause. *Id.*

Here, assuming the License Agreement is terminated,[3] the forum selection clause survives termination of the Agreement because Plaintiff fails to show contractual language expressly or implicitly indicating the contrary. Therefore, the forum selection clause contained in the License survives the expiration of the License Agreement. Thus, the undersigned finds *Thome* persuasive concerning the transfer of this case to Colorado.

Defendant also cites *Tex. Source Group, Inc. v. CCH, Inc*., 967 F. Supp. 234, 237 (S.D. Tex. 1997) contending that the case rejects the argument "that the forum-selection clause is unenforceable because the Agreement has expired." Def.'s Mot. Trans. Venue at 8. Plaintiff responds that *Texas Source Group* only applies to a narrow situation not at issue in this case. Pl.'s Resp. at 2-3. Specifically, Plaintiff contends that the holding and rationale of *Texas Source Group* is limited to cases that arise from an expired contract. *Id.* at 3. Plaintiff concludes that because Plaintiff's claims do not depend on evaluating the parties' rights or obligations arising under the Agreement, *Texas Source Group* is inapplicable to this case and thus the forum selection clause carries no weight. *Id.*

In *Texas Source Group*, the plaintiffs argued that the forum selection clause did not survive the expiration of the Agreement. *Tex. Source Group*, 967 F. Supp. at 238. Because of the court's earlier finding that the plaintiffs' claims directly and indirectly arose from the Agreement, the court found that the resolution of the plaintiffs' claims were dependent in part on an evaluation of the parties' rights and obligations arising under the Agreement. *Id.* Therefore, the court held that the forum selection clause survived the expiration of the Agreement. *Id.*

Here, the parties dispute whether the Colorado court's final judgment pertaining to the on-going royalty rate covers all patents Plaintiff owns. Defendant argues that the final judgment grants Defendant

---

[3] Whether the License Agreement terminated is currently pending on appeal in the Federal Circuit.

an on-going license in all of Plaintiff's patents. Plaintiff disagrees. In order to determine the scope of the court's order, it is necessary to determine the scope of the parties' prior License Agreement. Because the License Agreement must be subject to interpretation in order to determine whether the present claims are barred by res judicata, the forum selection clause survives the expiration of the Agreement. Thus, the undersigned finds *Texas Source Group* persuasive as to transferring this case to the District of Colorado.

Plaintiff argues that the present case is far more similar to *Innovative Display Techs. LLC v. Microsoft Corp.*, Civ. No. 2:13–CV–00783–JRG, 2014 WL 2757541 at *6 (E.D. Tex. June 17, 2014), in which the defendant sought to have a patent infringement case transferred on the basis of a forum selection clause in an expired license. Pl.'s Resp. at 3. Plaintiff claims that the court denied the defendant's motion concerning claims for infringement that took place after the expiration of the License, because such claims did not arise under the License, and were therefore not governed by the forum selection clause. *Id.* Plaintiff concludes that the same operative facts are at play here: Defendant is a former licensee, and Plaintiff is suing Defendant for its unauthorized post-expiration use of Plaintiff's technology. *Id.*

Defendant argues that Plaintiff's reliance on *Innovative* is misplaced. Specifically, Defendant contends that the plaintiff in *Innovative* alleged that Microsoft began infringing its patents the day after Microsoft's license to Innovative's technology expired. Def.'s Reply at 1-2. Defendant further asserts that it was Microsoft's continued use of the 4852-8454-2532.11 patented technology without a license that formed the basis of Innovative's infringement claims; unlike the present case, where Plaintiff's post-termination infringement and misappropriation claims are contrary to a court-ordered compulsory license that expressly incorporates the terms of the License. *Id.* Defendant concludes that because the License Agreement is an integral part of Plaintiff's claims in the present case, it should be construed by the Colorado court, which incorporated the License Agreement in its order. *Id.*

In *Innovative*, the court held that a "forum selection clause . . . is not applicable" where a plaintiff "makes it clear that it only seeks to recover damages and injunctive relief based on [a defendant's] alleged infringement that took place after the expiration date of the license" because "[s]uch claims do not arise under the License Agreement, and are therefore not governed by the forum selection clause." *Innovative Display Techs. LLC v. Microsoft Corp.*, No. 2:13 Civ. 00783, 2014 WL 2757541, at *6 (E.D. Tex. June 17, 2014) (citing *Video Streaming Sols. LLC v. Microsoft Corp.*, No. 13 Civ. 7031, 2014 WL 2198480, at *4 (N.D. Ill. May 27, 2014)).

The Court agrees with Defendant that the forum selection clause is applicable even though the contract expired, terminated, or has been breached. *See Blueskygreenland Envtl. Sols., LLC v. Rentar Envtl. Sols.*, Inc., No. 4:11-CV-01745, 2011 WL 6372842, at *3–5 (S.D. Tex. Dec. 20, 2011) (citing a string of cases). Though Plaintiff claims that the alleged infringement took place after the expiration date of the License, a Colorado jury found that Defendant's use of Plaintiff's patents or trade secrets after the License expired on April 16, 2009, was unlicensed and unauthorized. *Id.* Furthermore, the Colorado court's final judgment order contained an on-going interest rate to compensate Plaintiff for Defendant's continuing infringement.[4] The court's order as to the on-going interest rate expressly points to the License Agreement. Thus, whether Plaintiff is precluded from bringing its patent infringement and trade misappropriation claims against Defendant necessitates an interpretation of the License Agreement,

---

[4] Specifically the court ordered:

> XY's Motion to Set an Ongoing Royalty Rate (ECF No. 471) is GRANTED IN PART, and Trans Ova shall pay a rate of 12.5% of all gross receipts for the licensed products *set forth in the parties' prior License Agreement*, with an additional 2% royalty for reverse sorting services, unless the parties reach a separate license agreement which may supersede this ongoing royalty rate without further order of the Court.

*XY, LLC v. Trans Ova Genetics, LC*, No. 13-CV-0876-WJM-NYW, 2016 WL 1391615, at *16 (D. Colo. Apr. 8, 2016), *on reconsideration in part*, No. 13-CV-0876-WJM-NYW, 2016 WL 6664619 (D. Colo. Nov. 10, 2016) (emphasis added).

which in turn triggers the License Agreement's forum selection clause therein. Therefore, the Court finds that the forum selection clause is enforceable.

### b. Scope of the License

Having determined that the FSC is enforceable, the Court must now determine whether the present case falls within the scope of the FSC. *See Weber*, 811 F.3d at 770. Put another way, the Court must determine whether the interpretation of the 2007 License Agreement is essential to the assessment of the parties' claims and defenses. Plaintiff argues that the particular claims in this case are outside the scope of the forum selection clause because that clause expressly limits its application to disputes that involve construction, interpretation, or enforcement of the License. Pl.'s Resp. at 4. The forum selection clause provides:

> The License shall be construed, interpreted, and enforced pursuant to the laws of Colorado, and the parties hereto submit and consent to jurisdiction and venue in Larimer County, Colorado, except to the extent preempted by federal jurisdiction in which case such jurisdiction shall be in the Federal courts of Colorado.

Pl.'s Resp. at 4 (*citing* Ex. 1 to ECF. No. 14 at § 6.3.1 (emphasis added)). Plaintiff contends that because none of XY's claims require the Court to construe, interpret, or enforce the License, the forum selection clause is inapplicable. *Id.*

Defendant contends that contrary to Plaintiff's assertions, the 2007 License's forum selection clause is still in force and applies to both Plaintiff's current claims and Defendant's potential defenses, which all depend, in part, on an interpretation of the License. Def.'s Reply at 1. In support of this contention, Defendant points to the Colorado court's express referral to the License when it fashioned the post-trial ongoing royalty rate. *Id.* In its final judgment, the Colorado court ordered:

> Trans Ova shall pay a rate of 12.5% of all gross receipts *for the licensed products set forth in the parties' prior License Agreement,* with an additional 2% royalty for reverse sorting

> services, unless the parties reach a separate license agreement
> which may supersede this ongoing royalty rate without further
> order of the Court.

*Id.* (*citing* Ex. 4 to Mot. to Dismiss at 36 (emphasis added)).

Defendant further contends that "[i]f the technology and know-how at issue in this case fall within the scope of the Colorado court's post-trial order, as [Defendant] contends, then [Defendant's] continued use is lawful." Def.'s Reply at 1. Defendant argues that in order for the court to determine whether the technology and know-how at issue falls within the scope of the Colorado court's post-trial order, this Court must assess whether that use involves "the licensed products set forth in the parties' prior License Agreement." *See id.* Thus, determining what products and services the License covers is essential to assessing the validity of XY's current claims, and the forum selection clause provides that Colorado is the proper venue to interpret the License. See Ex. 1 to Mot. Dismiss at 13 ("This License agreement shall be construed, interpreted, and enforced pursuant to the laws of Colorado . . . .").

The Court concludes that the forum selection clause is enforceable and that Plaintiff's claims, at least in part, fall within its scope. *See Blueskygreenland*, 2011 WL 6372842, at *3–5. This Court assumes "not only that '[f]ederal law governs the determination of whether an enforceable forum selection clause exists[,]' but also that federal law controls whether [Plaintiff's] lawsuit falls within the scope of the forum selection clause." *Id.* (citing *Ondova Ltd. Co. v. Manila Industries, Inc.*, 513 F. Supp. 2d 762, 772 (N.D. Tex. June 16, 2007) (internal citations omitted)).

Following Fifth Circuit precedent, this Court thus looks to the language of the forum selection clause contained in the License Agreement to determine whether Plaintiff's claims fall within its scope. The forum selection clause states:

> The License shall be construed, interpreted, and enforced pursuant
> to the laws of Colorado, and the parties hereto submit and consent
> to jurisdiction and venue in Larimer County, Colorado, except to

the extent preempted by federal jurisdiction in which case such jurisdiction shall be in the Federal courts of Colorado.

Pl.'s Resp. at 4 (*citing* Ex. 1 to ECF. No. 14 at § 6.3.1 (emphasis added)).

As stated above, the Colorado court's order as to the on-going interest rate expressly points to the License Agreement. Thus, whether or not Plaintiff is precluded from bringing its patent infringement and trade misappropriation claims against Defendant necessitates an interpretation of the License Agreement. Therefore, the Court finds that the forum selection clause is enforceable.

### 2. Section 1404(a) Transfer Analysis

Having determined that the FSC in this case is valid, Plaintiff bears the burden of showing why the case should not be transferred to the forum specified in the clause. *Weber*, 811 F.3d at 766–67 (*citing Atl. Marine*, 134 S. Ct. at 581-82). Because the FSC is both mandatory and enforceable, Plaintiff's choice of forum merits no weight in this analysis, and the private-interest factors "weigh entirely in favor of the preselected forum," the District of Colorado. *Barnett*, 831 F.3d at 300 (citing *Atl. Marine*, 134 S. Ct. at 582). All that remains are the public-interest factors, which include:

1. administrative difficulties flowing from court congestion;

2. the local interest in having localized interests decided at home;

3. the familiarity of the forum with the law that will govern the case; and

4. the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"); *see also Piper Aircraft*, 454 U.S. at 241 n.6; *Barnett*, 831 F.3d at 308-09.

"These factors justify a refusal to enforce a forum-selection clause only in 'truly exceptional cases.'" *Barnett*, 831 F.3d at 309 (quoting *Weber*, 811 F.3d at 776). "Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight

of [an FSC],' such cases will not be common." *Weber*, 811 F.3d at 776 (citation omitted). "This suggests

quite a high burden of persuasion on the party seeking to avoid enforcement of the FSC . . . ." *Id.* Thus,

the Court will not apply the FSC if Plaintiff shows that the public-interest factors weigh heavily in favor

of this federal court being the ideal forum, as opposed to the District of Colorado. After examining the

public-interest factors, the undersigned finds that they do not weigh against application of the FSC in

this suit.

### a. Administrative Difficulties Flowing From Court Congestion

The first public interest factor focuses on "the administrative difficulties flowing from court

congestion." *Weber*, 811 F.3d at 776 (internal citations omitted). Plaintiff asserts:

> The time to trial in the Western District of Texas is shorter than in
> Colorado. This fact weighs against transfer. *Healthpoint, Ltd. v.
> Derma Scis., Inc.*, 939 F. Supp. 2d 680, 693 (W.D. Tex. 2013)
> ("Generally, this factor favors a district that can bring a case to
> trial faster."). Federal Court Management statistics show that, over
> the last six years, the median time to trial in civil actions in the
> Western District of Texas has consistently been 6-10 months faster
> to trial than the District of Colorado. Fed. Court Mgmt. Statistics,
> Ex. D. Time to trial is particularly important here, where some of
> the asserted patents begin expiring at the end of this year; a transfer
> would effectively waste a significant portion of the remaining life
> of the patents.

Pl.'s Resp. at 7. Defendant argues that the time between trials in each District are not significant

enough to weigh against transfer. Def.'s Reply at 5. The comparative court congestion leans slightly

in favor on the Western District of Texas because it has fewer case filings than the District of

Colorado[5] and a shorter average disposition time according to the most recently available federal

district court statistics for the twelve-month period ending in September 2016.[6]

---

[5] Between September 30, 2015-September 30 2016, the Western District of Texas had 337 case filings and the
District of Colorado had 455 civil case filings.

### b. Localized Interest of Each District

When considering the local interest factor, the court must look to the relevant factual connection between the events at issue and the two proposed venues. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 317-18 (5th Cir. 2008) ("*Volkswagen II*"). "This consideration is based on the principle that '[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation.'" *BNSF Ry. Co. v. OOCL (USA), Inc.,* 667 F. Supp. 2d 703, 712 (N.D. Tex. 2009) (*quoting Volkswagen I*, 371 F.3d at 206-07). The district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case. *BNSF Ry.,* 667 F. Supp. 2d at 712; *see also Seeberger Enters. v. Mike Thompson Rec. Vehicles, Inc.,* 502 F. Supp. 2d 531, 538-39 (W.D. Tex. 2007).

Plaintiff asserts that Texas, particularly the Western District, has a strong public interest in a local jury deciding this dispute because:

> (1) Plaintiff's headquarters are located in Texas, specifically in Navasota (one county removed from this District);
>
> (2) Defendant has four locations in Texas, including three in the Western District: one in Centerville (Leon County), one in Seguin (Guadalupe County), and one in Cedar Park, just outside of Austin (Williamson County);
>
> (3) Defendant has infringing machinery and performs infringing processes in at least its Centerville facility and Plaintiff intends to inspect this facility as part of discovery in the case; and
>
> (4) Neither Plaintiff nor Defendant has any operations in Colorado.

Pl.'s Resp. at 7. The undersigned agrees that this factor weights in favor of retention.

---

[6] The Court takes judicial notice of statistics published on the official United States Courts website available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/09/30-1. *See also Sabal Ltd. LP v. Deutsche Bank AG*, No. 5:16-cv-300-DAE, 2016 WL 5080385, at *11 n.9. (W.D. Tex. Sept. 19, 2016). From filing to disposition, the median time in months for Colorado is 7.8, whereas in the Western District of Texas the median time is 6.3 months. From Filing to Trial, the average civil case lasts for a period of 21.1 months whereas in Colorado the median time is 26.8 months.

### c. Familiarity with Federal Patent Law

The third public interest factor is "the familiarity of the forum with the law that will govern the case." *Volkswagen II*, 545 F.3d at 315. Plaintiff asserts:

> Because this case is primarily a patent infringement action, appealable exclusively to the Federal Circuit, federal law will apply to [Plaintiff's] claims, regardless of where the parties litigate. 28 U.S.C. § 1295(a), 1338(a). [Plaintiff's] trade secret claims are brought under the federal "Defend Trade Secrets Act" and Texas law. Complaint, [ECF]. No. 1, at ¶¶ 44-63. There is no reason to believe that the Colorado courts are more familiar with federal law than the Western District of Texas, and the inclusion of trade secret claims under Texas law indicates that Texas is the more appropriate forum.

Pl.'s Resp. at 8. This factor is generally neutral, although the Court notes that due to the prior litigation, the Colorado court is particularly familiar with the laws and facts of this case.

### d. Conflicts or Foreign Law

The final public interest factor is "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II,* 545 F.3d at 315. The law applied, with the exception of XY's state trade secret claim, is the same in both districts. Def.'s Reply at 5. Plaintiff argues that because this dispute does not involve construction, interpretation, or enforcement of the License, Colorado law does not apply. Pl.'s Resp. at 8. However, this factor is not an issue in this case because there is no known conflict of laws or foreign law in this case, nor was any conflict proposed by the parties. Therefore, this factor is neutral.

Overall, Plaintiff fails to demonstrate that application of the public-interest factors overwhelmingly disfavor transferring this case to the District of Colorado, which the law requires to rebut the otherwise presumptive effect of the FSC. Thus, the FSC controls, and this case must be transferred to the District of Colorado.

### III. EVEN IF FORUM SELECTION CLAUSE DOES NOT APPLY, TRANSFER IS STILL WARRANTED.

Even if the forum selection clause does not apply, the circumstances in this lawsuit satisfy the relevant factors under § 1404(a) and justify transfer to the District of Colorado. When another forum may be more convenient for the parties and the interests of justice would be better served in that forum, a district court may transfer any civil action to any other district or division where it might have been brought originally. *See* 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *In re Toa Technologies, Inc.,* 543 F. App'x 1006, 1008 (Fed. Cir. 2013) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 626 (1964)). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen,* 376 U.S. at 622). Because a transfer of venue motion is not a matter of substantive patent law, case law from the Court of Appeals for the Fifth Circuit governs this motion. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

In deciding whether to transfer a case based on § 1404(a), the court must examine both private and public interest factors.[7] *See In re Volkswagen of Am.,* 545 F.3d 304, 315 (5th Cir. 2008) *(Volkswagen II)* (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). However, no single factor is controlling. *Id.* Although it is not on its own a distinct factor in the venue transfer analysis, a plaintiff's choice of venue is "taken into account as it places a significant burden on the movant to show good

---

[7] The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)(Volkswagen 1). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

cause for the transfer." *Volkswagen II,* 545 F.3d at 314. Greater deference is given to the plaintiff's choice of forum when the forum is the plaintiff's home district. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981) (applying the same analysis on public and private interest factors in a forum non conveniens motion); *see also Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 672 (5th Cir. 2003); *see also Perusahaan Umum Listrik Negara Pusat v. MIV Tel Aviv*, 711 F.2d 1231, 1240 (5th Cir. 1983).

To meet this burden of good cause for transfer, the movant must demonstrate that the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *Id.* at 315. The transfer of venue for the convenience of parties and witnesses must render the litigation more convenient as a whole and not merely shift inconvenience between the parties. *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 942 (E. D. Tenn. 2006); *see also Van Dusen*, 376 U.S. at 645-46.

## A. Colorado is a Proper Venue

Under 28 U.S.C. § 1404(a), the threshold question is whether the transferee district qualifies under the pertinent venue statute as one where the declaratory claims might have been brought. *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, No. Civ.H-03-4973, 2004 WL 2278770 *15 (S.D. Tex. Sept. 14, 2004) (*citing In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003)). In a patent infringement case, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A defendant resides where the company is incorporated or its principal place of business. 28 U.S.C. § 1391(c); *see Daimler AG v. Bauman*,134 S. Ct. 746, 756-58 (2014). Here, the parties dispute whether this action could have been brought in the District of Colorado.     However, as the proponent for enforcing the FSC, Defendant consents to Colorado's jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703

(1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654-55 (5th Cir. 2002) (finding parties lacking minimum contacts irrelevant because "[p]ersonal jurisdiction is an individual right that is subject to waiver."); *accord Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477, 480 (S.D.N.Y.1985) ("It is well settled that lack of personal jurisdiction is a privileged defense that can be waived" by formal submission or by conduct).

Even if Plaintiff initially filed this suit in the District of Colorado and Defendant sought to transfer elsewhere, Defendant would be subject to Colorado's jurisdiction because Defendant waived its right to another forum by extensively litigating in Colorado already. *See In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994) ("[A] party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or ***demonstrates a willingness to engage in extensive litigation in the forum***.") (*citing In re Real Estate Title and Settlement Services Antitrust Litigation*, 869 F.2d 760, 771 (3d Cir.), *cert. denied,* 493 U.S. 821 (1989)) (emphasis added). Therefore, Plaintiff's personal jurisdiction argument is without merit. As such, the Court finds that the instant matter could have been filed in the District of Colorado.

## B. Public Interest Factors

Assuming the forum selection clause is inapplicable, Defendant bears the burden of showing good cause for transfer. To meet this burden, Defendant must demonstrate that the transferee venue is "clearly more convenient than the venue chosen by [Plaintiff]." *Volkswagen II*, 545 F.3d at 315. [8] The undersigned discussed the public interest factors at length in Section II of this Report and Recommendation. Because it is Defendant's burden to demonstrate that the public and private interest

---

[8] The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

factors to show that the District of Colorado is clearly more convenient than the Western District of Texas, and because the public interest factors contain mainly objective data, the undersigned will briefly summarize its findings in Section II.

The first public interest factor focuses on "the administrative difficulties flowing from court congestion." *Weber*, 811 F.3d at 776 (internal citations omitted). Here, the comparative court congestion leans slightly in favor on the Western District of Texas because it has less case filings than the District of Colorado[9] and a shorter average disposition time according to the most recently available federal district court statistics for the twelve-month period ending in September 2016.[10]

When considering the local interest factor, the court must look to the relevant factual connection between the events at issue and the two proposed venues. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 317-18 (5th Cir. 2008) ("*Volkswagen II*"). Defendant did not put forth an argument as to the localized interest factor. Thus, the undersigned finds this factor weighs in factor of retention.

The third public interest factor is "the familiarity of the forum with the law that will govern the case." *Volkswagen II*, 545 F.3d at 315. Again, this factor is not an issue in this case because there is no known conflict of laws or foreign law in this case, nor was any conflict proposed by the parties. Therefore, this factor is neutral.

The final public interest factor is "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II,* 545 F.3d at 315. As discussed, this factor is not an issue in this case because there is no known conflict of laws or foreign law in this case, nor was

---

[9] Between September 30, 2015-September 30 2016, the Western District of Texas had 337 case filings and the District of Colorado had 455 civil case filings.

[10]   The Court takes judicial notice of statistics published on the official United States Courts website available at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/09/30-1. *See also Sabal Ltd. LP v. Deutsche Bank AG*, No. 5:16-cv-300-DAE, 2016 WL 5080385, at *11 n.9 (W.D. Tex. Sept. 19, 2016). From filing to disposition, the median time in months for Colorado is 7.8, whereas in the We3stern District of Texas the median time is 6.3 months. From Filing to Trial, the average civil case lasts for a period of 21.1 months whereas in Colorado the median time is 26.8 months.

any conflict proposed by the parties. Therefore, this factor is neutral.

**C. Private Interest Factors**

The private interest factors similarly weigh in favor of transferring venue. The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) *(Volkswagen I).*

**1. Convenience of Witnesses**

The first private interest factor is the cost of attendance for willing witnesses. *See Volkswagen II*, 545 F.3d at 317. Of the individual factors in the transfer analysis, the convenience of the witnesses is probably the most important. *In re Genetech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Fifth Circuit applies the "100 mile rule" for guidance when analyzing this factor. *Volkswagen I,* 371 F.3d at 205. The "100 mile rule" holds that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 204-05. If the transferee venue would result in an average distance away from the witnesses that is shorter than the original venue, then the convenience factor weighs in favor of transfer. *Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

With respect to the location of potential witnesses that may be involved in this case, Defendant claims that a transfer to the District of Colorado would be more convenient for all parties. Defendant asserts that there is no demonstrable inconvenience to either the parties or the witnesses by having to litigate this case in Colorado. Def.'s Mot. Trans Venue at 9. Defendant continues that the parties have already litigated this case in Colorado before, the same fact and expert witnesses are likely to be called

at this trial as were called at the last one, and in this case, like the last one, Plaintiff has not shown

burden or hardship. *Id.*

> Plaintiff asserts:

> > The fact that [Defendant] does not reside in Colorado strongly weighs against transfer. *James v. Valvoline, Inc.*, 159 F. Supp. 2d 544, 554 (S.D. Tex. 2001) (where movant does not reside in transferee district, this factor "does not favor transfer and indeed strongly favors retention in this Court."). [Defendant] has done nothing to demonstrate that Colorado would be more convenient for the parties or their witnesses. It has not identified any personnel for either side who reside in Colorado that are likely to testify in this case, and [Defendant] has not disputed that its personnel in Centerville, Texas will likely have relevant knowledge.

Pl.'s Resp. at 8.

Defendant argues that although both parties have facilities in Texas, the location of evidence and witnesses is not materially different from the prior case, and Plaintiff has already shown that it can effectively litigate these issues in Colorado. Def.'s Reply at 5. Nor is Plaintiff's choice in suing Defendant in its home forum entitled to great weight. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2002) (holding that a plaintiff's choice to sue in its home state "is neither conclusive nor determinative."). Def.'s Reply at 5.

Contrary to Defendant's assertion, it is Defendant's, not Plaintiff's burden to demonstrate that Colorado would be more convenient for the parties or their witnesses. The Court agrees with Plaintiff that Defendant fails to demonstrate that Colorado would be more convenient for the parties or their witnesses, and finds that this factor favors retention.

### 2. Availability of Compulsory Process

The second private interest factor the Court considers is "the availability of compulsory process to secure the attendance of the witness." *Volkswagen II*, 545 F.3d at 316. A court cannot require a person that is neither a party nor a party's officer to travel more than 100 miles from where that person resides,

is employed, or regularly transacts business in person. *See* Fed. R. Civ. P. 45(c). However, a court can compel a non-party witness "to attend a trial by traveling from any such place within the state where the trial is held," so long as the person does not incur substantial expense in traveling more than 100 miles to attend trial. *Id.*

Plaintiff argues that despite bearing the burden of showing that Colorado is "clearly more convenient," Trans Ova makes no showing that Colorado would be more convenient or cost less for willing witnesses, nor has Trans Ova identified any non-party witnesses for whom compulsory process may be required." Pl.'s Resp. at 9. The undersigned agrees and finds this factor favors retention.

### 3. Ease of Access to Relevant Sources of Proof

The third private interest factor is "the relative ease of access to sources of proof." *Volkswagen II*, 545 F.3d at 316. "In a patent infringement action, the preferred forum is that which is the center of gravity of the accused activity." *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007) (quoting *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, 2003 WL 21251684, at *3 (N.D. Tex. May 23, 2003)). In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). "The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *S.C. Johnson & Son, Inc. v. Gillette Company,* 571 F. Supp. 1185, 1187-88 (N.D. Ill. 1983).

Plaintiff contends:

> The ease of access to sources of proof weighs heavily in favor of venue in this District. All XY documents likely to be relevant to this litigation are located in Texas. Ex. C at ¶ 6. Most or all R&D documents and invention records pertaining to the asserted patents are kept in XY's Navasota, Texas offices, as are XY's financial documents. *Id.* Critical Trans Ova evidence is located in Texas as

> well. In particular, evidence pertaining to Trans Ova's infringing
> activities is located at Trans Ova's Centerville, Texas facility,
> including documents and the infringing sperm sorting equipment
> that XY intends to inspect as part of this case. There are no
> significant sources of proof located in Colorado.

Pl.'s Resp. at 9. Since the majority of the documents and physical evidence relating to Defendant's

alleged infringing activities are located in Texas, this factor favors retention.

### 4. Other Practical Consequences

The fourth private interest factor is "all other practical problems that make trial of a case easy,

expeditious and inexpensive." *Volkswagen II,* 545 F.3d at 315. Courts weigh a number of case-specific

factors in a§ 1404(a) analysis but, at the end of the day, judicial economy plays a paramount role in

trying to maintain an orderly, effective, administration of justice. *In re Vistaprint Ltd*, 628 F.3d 1342,

1346 (Fed. Cir. 2010); *see also Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)

(emphasizing the important role that judicial economy and efficiency play in a§ 1404(a) analysis).

A major factor comprising the judicial economy is when there are pending cases "before the

court between the plaintiff and another defendant involving the same patent-in-suit, pertaining to the

same underlying technology, and involving similar accused services." *In re Vistaprint*, 628 F.3d at 1344;

*see In re Eli Lilly and Co.*, F. App'x , 2013 WL 5708614, *1-2 (Fed. Cir. 2013) ("[I]t is entirely within

the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or

judicial economy can be of paramount consideration, . . . and as long as there is plausible support of

record for that conclusion we will not second guess such a determination, even if the convenience

factors call for a different result.") (internal quotations and citations omitted).

Defendant alleges that judicial economy overwhelmingly factors transfer. Def.'s Mot. Trans

Venue at 9. Defendant further contends that there are:

> substantially overlapping questions of law and fact between the
> present action and the Colorado action, including contract issues

surrounding the parties' performance under the License, the scope and validity of the asserted patents (which are closely related to those asserted in the Colorado action), the use and sale of the accused products and services, issues of infringement, [Plaintiff's] potential anti-competitive practices, the measure of harm and/or calculation of damages owing to [Defendant's] alleged infringement and unjust enrichment, whether the Colorado court-imposed compulsory license covers [Defendant's] use of the patented technology, etc. All of these issues (and more) are common to the claims and defenses in both cases. For each of these issues, most or all of the same documents, analyses, fact witnesses, and expert testimony will be offered as evidence.

Def.'s Mot. Trans Venue at 9. Defendant further asserts:

Significantly, the Colorado court is intimately familiar with all of these issues. It oversaw litigation of these very same issues for over three years, ruled on discovery and summary judgment motions, handled all pretrial matters, conducted a three-week trial, and ruled on post-trial motions. That court has carefully examined the License at the heart of the present dispute and has sat through days of expert testimony regarding the patented technology. The Colorado court is thus best-situated by far to try the issues raised in this case.

Id. Plaintiff argues:

[Defendant's] claim that the Colorado court is more familiar with the legal and factual issues in this case is exaggerated, and ignores the fact that [Defendant] will be precluded from re- litigating the issues decided in the Colorado litigation. The patents that were at issue in the Colorado case are not the same as the patents-in-suit here, see [Plaintiff's] Response to [Defendant's] 12(b)(6) Motion to Dismiss (contemporaneously filed ), and the Colorado case did not relate to [Defendant's] misappropriation of [Plaintiff's] trade secrets. To the extent that the technology in this case overlaps with the technology in the Colorado litigation, there will be little—if any—impact on the efficiency of this case. Indeed, [Defendant] stipulated to infringement in the first case (Ex. E), and [Defendant] cannot now dispute that it practices those portions of the patents that are common with the patents in the Colorado litigation. Moreover, [Defendant's] assertion that "the License [is] at the heart of the present dispute" (Mot. at 10) is flatly incorrect—this case pertains solely to [Defendant's] activities after the License expired, and [Defendant] will be collaterally estopped from re-litigating the loss of its License.

Pl.'s Resp. at 10.

A § 1404(a) motion can be granted because of the importance of judicial economy, even if the convenience factors are in favor of retention. *See In re Vistaprint*, 628 F.3d at 1344, 1346. Here, Plaintiff sued defendant for breach of contract as well as various patent infringement claims against Defendant arising out of disputes over the License Agreement which permitted Defendant to use Plaintiff's patented technology in 2012. *XY, LLC*, 2016 WL 1391615, at *16. The court held a three week jury trial commencing on January 25, 2016, and the jury rendered a verdict on February 12, 2016. *Id.* The jury found that Defendant had materially breached the License Agreement before April 16, 2009, and failed to cure the breach by that date. *Id.*

In accordance with the jury's verdict, the License Agreement expired on April 16, 2009, and any subsequent use of Plaintiff's patents or trade secrets by Defendant after that date was unlicensed and unauthorized. *Id.* Because Defendant continued to use Plaintiff's technology after that date, the jury also found that Defendant had willfully infringed ten of Plaintiff's patents. *Id.* As part of the court's final judgment order, the court set an ongoing royalty rate to compensate Plaintiff for Defendant's continuing infringement. Specifically the court ordered:

> XY's Motion to Set an Ongoing Royalty Rate (ECF No. 471) is GRANTED IN PART, and Trans Ova shall pay a rate of 12.5% of all gross receipts for the licensed products *set forth in the parties' prior License Agreement*, with an additional 2% royalty for reverse sorting services, unless the parties reach a separate license agreement which may supersede this ongoing royalty rate without further order of the Court.

*Id.* (emphasis added). The court noted that Defendant effectively admitted its intent to continue to practice Plaintiff's patents, thus necessitating some remedy for further infringement. *Id.* at n. 3.

The undersigned finds that judicial economy favors transfer. The efforts expended by the District of Colorado to become familiar with the technology at issue weigh extensively in favor of transfer.

Furthermore, though Plaintiff argues that to the extent that the technology in this case overlaps with the technology in the Colorado litigation, there will be little if any impact on the efficiency of this case, the undersigned disagrees.

Moreover, the Motion to Dismiss that is currently pending in this suit mainly concerns whether Plaintiff is barred to bringing suit due to res judicata. There is no court better to determine whether the claims overlap or not than the Court who oversaw and issued final judgment in the prior litigation. Additionally, the prior suit is currently on appeal to the Federal Circuit, and the result of that appeal may affect this litigation if reversed. For the foregoing reasons, the Court holds that the interest of judicial economy strongly favors this case be transfer to the United States District of Colorado.

**D. Balancing the Factors**

Though the § 1404(a) factors favor retention, the importance of judicial economy heavily favors transfer. Since judicial economy favors transferring this case, this Court holds that this case be transferred to the United States District of Colorado. Given the fact that this lawsuit involves the same parties and in part, the same technology that was before the Colorado court, transferring venue of this case is in accordance with judicial economy and efficiency.

### IV. CONCLUSION

In sum, the forum selection clause in the License Agreement is applicable and enforceable in this case. Even if the forum selection clause does not apply, judicial economy factors favor transferring this case to the District of Colorado. Therefore, Defendant's Motion to Transfer Venue is **GRANTED** and this case is hereby **TRANSFERRED** to the United States District of Colorado.

### IV. ORDERS

After thoroughly reviewing the record, Defendant's Motion to Transfer Venue (ECF No. 17) is

**GRANTED** and this case is hereby **TRANSFERRED** to the United States District Court for the

District of Colorado, Denver Division, pursuant to 28 U.S.C. § 1404(a).[11] This Court defers to the

transferee court as to Defendant's Motion to Dismiss (ECF No. 14) and Plaintiff's Motion for Leave to

File Surreply to Defendant's Motion to Dismiss (ECF No. 30).

**SIGNED** April 5, 2017.

_____

**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Larimer County falls within the Denver Division of the District of Colorado.