**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 17-cv-0944-WJM-NYW

XY, LLC,
BECKMAN COULTER, INC., and
INGURAN, LLC d/b/a STGENETICS,

      Plaintiffs,

v.

TRANS OVA GENETICS, LC,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART**
**TRANS OVA'S MOTION TO DISMISS**

---

In this lawsuit, Plaintiffs XY, LLC, Beckman Coulter, Inc., and Inguran, LLC (together, "XY") bring patent infringement claims, as well as certain non-patent claims, against defendant Trans Ova Genetics, LC ("Trans Ova"). Currently before the Court is Trans Ova's Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 31.) Since this motion's filing, XY has filed two additional amended complaints, and the Fourth Amended Complaint (ECF No. 74) is the currently operative complaint. However, the parties filed a Joint Status Report stating that Trans Ova's motion may be decided as if directed at the Fourth Amended Complaint (*see* ECF No. 83), which the Court will refer to below simply as the "Complaint."

For the reasons stated below, the Court will grant Trans Ova's motion as to XY's Counts II and IV–XI, but will otherwise deny the motion. The upshot of this order is that this case will proceed on XY's Counts I, III, and XII.

## I.  BACKGROUND

Broadly speaking, this case centers around technology developed by XY that attempts to sort, and usually succeeds in sorting, non-human mammalian semen based on whether a sperm cell carries an X chromosome or a Y chromosome.  Such "sexed semen" is useful in artificial insemination to ensure the gender of the offspring.

### A.    The 2012 Lawsuit

Trans Ova provides semen-sorting services through XY's technology.  Many XY patents related to this technology, as well as a patent license agreement ("License Agreement") between XY and Trans Ova, were already litigated before the undersigned in *XY, LLC v. Trans Ova Genetics, LC*, Case No. 13-cv-876-WJM-NYW.  The Court will refer to this as the "2012 Lawsuit" because, although it bears a 2013 Case number, it was originally filed in 2012 in the Eastern District of Texas, and was later transferred here.

The 2012 Lawsuit was tried to a jury in January and February 2016, resulting in a verdict mostly in XY's favor.  (*See* 2012 Lawsuit, ECF No. 461.)  In particular, the jury found that XY had breached the parties' License Agreement sometime before April 2009, but that Trans Ova had also breached the Agreement before that date, and so the License Agreement terminated by then and deprived Trans Ova of its right to practice XY's patents.  (*Id.* at 1–2.)  The jury also found that XY's patents had been infringed, and that most of Trans Ova's defenses and counterclaims failed (including assertions of invalidity, and antitrust violations).  (*Id.* at 3–9.)  The lone defense with which the jury agreed was Trans Ova's assertion of unclean hands, thus barring any claims by XY for unjust enrichment or injunctive relief.  (*Id.* at 9.)  The jury ultimately awarded $4.585

million to XY as patent infringement damages and $1.481 million as contractual damages, but the latter sum was subsequently offset by $528,000 that the jury awarded to Trans Ova as contractual damages against XY. (*Id.* at 2, 9.)

On April 8, 2016, the Court entered an Order on Post-Trial Motions upholding the jury verdict (except as to ancillary matters not relevant here), denying enhanced damages and attorneys' fees to XY, awarding XY prejudgment interest, and also awarding XY an ongoing royalty in lieu of an injunction. (2012 Lawsuit, ECF No. 500.) XY subsequently filed a Rule 59(e) motion to amend the judgment, arguing that the ongoing royalty was set at an unlawfully low rate. (*Id.*, ECF No. 505.) By order dated November 10, 2016, the Court denied that motion. (*Id.*, ECF No. 555 at 1–6.)

The 2012 Lawsuit is now on appeal to the Federal Circuit. (*Id.*, ECF Nos. 556, 557.)

## B.    The 2016 Lawsuit

On December 6, 2016—just short of four weeks after the Court's order on XY's motion to amend the judgment—XY filed a new lawsuit against Trans Ova in the Eastern District of Texas, which the Court will refer to as the "2016 Lawsuit." (ECF No. 1-1.)[1] That case was transferred to this District on April 18, 2017. (ECF No. 1.) The 2016 Lawsuit—*i.e.*, this lawsuit—again focuses largely on whether Trans Ova has breached various XY patents regarding semen-sorting technology. XY's specific causes of action are currently as follows:

- Count I: infringement of U.S. Patent No. 9,145,590 ("590 Patent"), issued

---

[1] All ECF citations, if not preceded by "2012 Lawsuit," are citations to the docket in this lawsuit.

on September 29, 2015;

- Count II: infringement of U.S. Patent No. 7,723,116 ("116 Patent"), issued on May 25, 2010;

- Count III: infringement of U.S. Patent No. 9,365,822 ("822 Patent"), issued on June 14, 2016;

- Count IV: infringement of U.S. Patent No. 7,208,265 ("265 Patent"), issued on April 14, 2007;

- Count V: infringement of U.S. Patent No. 6,372,422 ("422 Patent"), issued on April 16, 2002;

- Count VI: infringement of U.S. Patent No. 8,652,769 ("769 Patent"), issued on February 18, 2014;

- Count VII: trade secret misappropriation under the Defend Trade Secrets Act, based on a former XY employee teaching certain techniques to Trans Ova;

- Count VIII: common-law trade secret misappropriation, based on the same conduct;

- Count IX: common-law unfair competition, based on the same conduct;

- Count X: *quantum meruit*, based on the same conduct;

- Count XI: unjust enrichment, based on the same conduct;

- Count XII: infringement of U.S. Patent No. RE46,559 ("559 Patent"), reissued on September 26, 2017, and originally derived from United States Patent No. 9,134,220 ("220 Patent"), which issued on September 15, 2015.

(ECF No. 74 at 8–36.)

## II.  ANALYSIS

Trans Ova asserts—and XY nowhere denies—that this lawsuit is XY's second attempt to do what it failed to do in the 2012 Lawsuit, namely, shut down Trans Ova, thus eliminating a competitor.  (ECF No. 31 at 2, 14–15; *see also* ECF No. 41 at 1–2, 3 n.3, 5, 8.)  Trans Ova, however, makes no argument that such intentions are themselves the basis for dismissal.  Rather, Trans Ova's Motion to Dismiss argues that the ongoing royalty this Court awarded in the 2012 Lawsuit equates to a perpetual license to practice all of XY's patents, including all of those asserted in this lawsuit.  Trans Ova further argues that the causes of action asserted in Counts II–XI are barred by claim preclusion.  The Court addresses these arguments in turn.

## A.    Scope of the Ongoing Royalty Awarded in the 2012 Lawsuit

Trans Ova's first argument turns on language used by the Court in its Order on Post-Trial Motions in the 2012 Lawsuit.  Specifically, when awarding an ongoing royalty, the Court ordered that "Trans Ova shall pay a rate of 12.5% of all gross receipts for the licensed products set forth in the parties' prior License Agreement, with an additional 2% royalty for reverse sorting services."  (2012 Lawsuit, ECF No. 500 at 36, ¶ 4.)  Trans Ova notes that "licensed products" under the License Agreement included "the Technology," which the License Agreement further defined to include all intellectual property that XY "now or hereafter, owns, controls, licenses, or has an interest in."  (ECF No. 31 at 6–7 (internal quotation marks omitted; emphasis removed).)  Thus, says Trans Ova, it "has a perpetual, paid-up license" to all of XY's intellectual property, including all of the patents and trade secrets at issue in this lawsuit.  (*Id.* at 7.)

5

XY counters, correctly, that this consideration was never before the Court in the 2012 Lawsuit. Rather, the Court was resolving XY's motion specifically for an ongoing royalty relating to the 2012 Lawsuit's patents-in-suit. (ECF No. 39 at 2–3.) The Court never intended to grant, and never was informed (until now) that its language might be construed to grant, a perpetual license to *all* of XY's intellectual property, existing or yet to be acquired. Accordingly, the Court rejects this basis for dismissal of XY's new lawsuit.

**B.    Claim Preclusion: Patent Infringement Claims (Counts II–VI)**

   1.    <u>Legal Standard & General Points of Contention</u>

Claim preclusion (*res judicata*) can apply to patent infringement causes of action, but the extent to which a prior suit precludes such a cause of action is a question "particular to patent law, [and therefore analyzed] under applicable Federal Circuit law," rather than regional circuit law. *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001).

"The general concept of claim preclusion is that when a final judgment is rendered on the merits, another action may not be maintained between the parties on the same 'claim,' and defenses that were raised or could have been raised in that action are extinguished." *Id.* In approaching this analysis, the Federal Circuit has endorsed the "pragmatic," "transactional" Restatement approach:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> (2) What factual grouping constitutes a "transaction", and

> what groupings constitute a "series", are to be determined
> pragmatically, giving weight to such considerations as
> whether the facts are related in time, space, origin, or
> motivation, whether they form a convenient trial unit, and
> whether their treatment as a unit conforms to the parties'
> expectations or business understanding or usage.

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (quoting

Restatement (Second) of Judgments § 24 (1982)) (ellipses as in original).  That said,

many Federal Circuit cases do not explicitly engage in a pragmatic evaluation, but

instead focus on the similarities between the patents asserted in the earlier and later

lawsuits; and the similarities between the devices or processes accused in the earlier

and later lawsuits.  *See Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed.

Cir. 2014).

    As for similarity of the accused devices, Trans Ova argues—and XY does not

dispute—that this 2016 Lawsuit attacks "the same sex-selection technology" examined

in the 2012 Lawsuit.  (ECF No. 31 at 4.)  Thus, the questions primarily argued in the

parties' briefs are: (1) whether XY was fairly in a position to assert, in the 2012 Lawsuit,

causes of action for infringement of the patents asserted in this lawsuit; and (2) whether

the patent claims asserted in this lawsuit are the same (or "materially" the same, or in

some other sense "the same") as those asserted in the 2012 Lawsuit.  The Court finds

that these two questions are, under the circumstances, analytically distinct, and so the

Court will address them separately.

    2.    "Could Have Been Brought" (Counts II, IV, V, VI)

    Trans Ova argues XY could have brought infringement claims in the 2012

Lawsuit based on the 422 Patent (Count V), the 265 Patent (Count IV), and the 116

Patent (Count II), because those patents issued before the 2012 Lawsuit began.  (ECF

No. 31 at 9.)  Trans Ova further argues that XY could have brought an infringement claim in the 2012 Lawsuit based on the 769 Patent (Count VI) because, "although [it] issued after the case started, it could have been added by amendment (just as XY added [to the 2012 Lawsuit, through an unopposed motion to amend, a particular patent that] issued only three months earlier [than the 769 Patent])."  (*Id.*)

XY, however, invokes the Federal Circuit's "general rule" set forth in *Kearns v. General Motors Corp.*, 94 F.3d 1553 (Fed. Cir. 1996), which is supposedly that there can be there "no claim preclusion with regard to 'patents that had not been included in the [prior] suit, were not before the [prior] court, and were not part of the [prior] judgment' because '[e]ach patent asserted raises an independent and distinct cause of action.'"  (ECF No. 39 at 5–6 (quoting *Kearns*, 94 F.3d at 1555).)  To the extent XY means to say that *Kearns* essentially obviates any "could have been brought" analysis, XY is incorrect.  *Kearns* itself acknowledges the argument that "the causes of action should have been litigated together" is "[a] possible basis for barring the [later] suit." 94 F.3d at 1556.

XY also claims that "the Federal Circuit has cautioned against" could-have or should-have arguments, "noting that some cases have 'used language that, standing alone, could be misread as providing that the application of claim preclusion turns solely on whether a claim could have been brought in an earlier action.'"  (ECF No. 39 at 12 (quoting *Acumed*, 525 F.3d at 1325).)  XY is correct that the Federal Circuit has steered courts away from any claim preclusion analysis that turns "solely" or "merely" on whether a cause of action could have been brought in a previous lawsuit.  *See Acumed*, 525 F.3d at 1325–26.  But XY is incorrect to characterize the Federal Circuit as

"caution[ing] against" any could-have inquiry. Rather, *Acumed* makes clear that "could have been brought" is—except in certain circumstances described below (Part II.B.3)—a necessary but not sufficient condition for claim preclusion. In other words, if the new cause of action could *not* have been brought in the prior lawsuit, then claim preclusion usually fails, but the inverse is not always true. Once it has been established that the new cause of action could have been brought in the prior lawsuit, the application of claim preclusion turns on whether the new cause of action "arises from the same transactional facts as a prior action." *Id.* at 1326.[2]

Accordingly, the Court must first answer the threshold question of whether XY could have sued for infringement of the 422, 265, 116, and/or 769 Patents in the 2012 Lawsuit. And the first step is to set forth the relevant events in chronological order:

- **April 16, 2002:** 422 Patent issues.

- **April 14, 2007:** 265 Patent issues.

- **May 25, 2010:** 116 Patent issues.

- **March 5, 2012:** 2012 Lawsuit filed in the Western District of Texas (*see* 2012 Lawsuit, ECF No. 1-1).

- **August 20, 2012:** Deadline passes to amend pleadings in the 2012 Lawsuit, subject to the qualification "that the Parties may seek leave to amend the pleadings pursuant to Fed. R. Civ. P. 15" (*id.*, ECF No. 24 at 6).

- **April 4, 2013:** 2012 Lawsuit transferred to this District (*id.*, ECF No. 1).

---

[2] *Acumed* twice states that the "structure" of the accused device(s) is an "essential transactional fact[]." *Id.* at 1324, 1326. But, as noted, no party has argued that XY's current infringement claims are directed at devices different from those accused in the 2012 Lawsuit.

- **November 21, 2013:** Court grants XY's unopposed motion to amend the complaint to add a claim for infringement of a patent that issued on October 9, 2013 (*id.*, ECF No. 112).

- **February 18, 2014:** 769 Patent issues.

- **June 13, 2014:** Fact discovery closes in the 2012 Lawsuit (*see* 2012 Lawsuit, ECF No. 22 at 6).

Without question, in a basic literal sense, XY could have sued on at least the 422, 265, and 116 Patents in the 2012 Lawsuit because they preexisted that lawsuit. XY responds that

> it did not obtain evidence of infringement of these three patents until long after the deadline for amending pleadings had passed.[3] As both the Court and Trans Ova are aware, Fed. R. Civ. P. Rule 11 requires XY to diligently investigate potential infringements and develop a good-faith belief of infringement before asserting a patent infringement claim. Nowhere in its Motion does Trans Ova even attempt to show that XY had a sufficient Rule 11 basis to bring any of the claims at issue in this lawsuit.

(ECF No. 39 at 14 (citation omitted).) Trans Ova does not challenge this assertion, but instead counters that "XY had ample time to conduct discovery and determine whether it had sufficient evidence to amend its complaint," and that "Trans Ova had already shown that it was amenable to amending the pleadings in order to avoid piecemeal

---

[3] This is a factual assertion not contained in XY's Complaint. Normally a party cannot supplement its complaint through a response to a motion to dismiss. However, as will become clear shortly, Trans Ova does not object on this basis. In addition, claim preclusion is an affirmative defense for which Trans Ova bears the burden. *See Pelt v. Utah*, 539 F.3d 1271, 1283–84 (10th Cir. 2008). Generally speaking, a plaintiff need not preemptively plead facts sufficient to overcome an affirmative defense. *See, e.g.*, *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir.1965) (reversing district court's grant of a motion to dismiss on *res judicata* grounds because the facts that would support the defense were not contained in the complaint). Consequently, in these circumstances the Court will accept this assertion as undisputed for present purposes.

litigation," referring to the unopposed amendment in November 2013. (ECF No. 41 at 6.) Trans Ova directs these same arguments at the 769 Patent, which issued after the case commenced. (*See id.*; *see also* ECF No. 31 at 9–11.)

In one decision, however, the Federal Circuit appears to have already rejected this sort of reasoning, even as to claims arising from the same nucleus of operative facts:

> "The *res judicata* doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997). A plaintiff may seek leave to file a supplemental pleading to assert those claims, but "the doctrine of res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." *Fla. Power & Light Co. v. United States*, 198 F.3d 1358, 1360 (Fed. Cir. 1999) (quoting *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir. 1998)) (quotation marks omitted); *see also Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000); *L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 750 F.2d 731, 739–40 (9th Cir. 1984). [The defendant's] effort to distinguish these cases as involving claims arising from different nuclei of operative facts is unavailing. That was not the basis for those decisions.

*Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010). Taking this language at face value, it appears that if a party acquires a patent infringement cause of action during the course of litigation, the party need not attempt to add that cause of action to the ongoing litigation or risk claim preclusion—even if the new infringement claim arises from the same transactional facts that prompted the ongoing litigation.

Despite the seemingly unequivocal nature of this language, the Court is confident that the Federal Circuit did not intend to draw a non-rebuttable line on the date that a party files its lawsuit, particularly where a later lawsuit attacks the same product or

process at issue in an earlier lawsuit—as is the case here.  The Court reaches this

conclusion for three reasons.

First, a hard, bright line would run contrary to the explicitly "pragmatic"

Restatement approach endorsed by the Federal Circuit for decades.  *See, e.g.*,

*Acumed*, 525 F.3d at 1324; *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 478–79 (Fed. Cir.

1991); *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir.

1983).

Second, even the Federal Circuit itself has had difficulty remaining consistent

with its language in *Gillig*.  Specifically, the Federal Circuit later avoided the rule of

*Gillig*, as derived from the *Florida Power & Light* decision that *Gillig* quoted, precisely

because it found that *Florida Power & Light* was addressing claims arising from a

different nucleus of operative facts.  *Aptus Co. v. United States*, 189 F. App'x 946, 949

(Fed. Cir. 2006).  In other words, *Aptus* appears to directly contradict *Gillig*'s assertion

that *Florida Power & Light*'s outcome was independent of whether the allegedly

precluded cause of action arose from a different nucleus of operative facts.

Third, if *Gillig* truly draws a bright line at the filing of the complaint, it raises

serious policy concerns that the Court believes the Federal Circuit would not

countenance if faced with them directly.  No matter how "related in time, space, origin,

or motivation"; no matter whether after-acquired claims would "form a convenient trial

unit" with those already in the lawsuit; and no matter "the parties' expectations or

business understanding or usage," a hard-and-fast rule that the filing of the original

complaint ends the availability of claim preclusion could lead to significant, costly, and

potentially unmanageable mischief.  A plaintiff with, say, ten patents regarding the same

subject matter[4] could remain willfully ignorant as to five of them while conducting a pre-filing investigation of the competitor's products or processes, knowing all along that it probably could develop a reasonable Rule 11 basis as to all ten patents. Then the plaintiff files a complaint asserting only five patents, knowing that the discovery it receives will likely demonstrate claims under the other five patents, but also knowing that it can "stockpile" those after-acquired claims and bring a second lawsuit if the first lawsuit does not turn out to the plaintiff's liking.

In this way, a plaintiff could bring multiple successive time-consuming, resource-draining attacks against the same defendant and the same product or process, simply by ensuring that it does not obtain a reasonable Rule 11 basis to sue on all of its potentially relevant patents at once. Especially when directed at a smaller competitor, it can readily be foreseen that such an approach could result in the wearing down of a patent defendant to the point of financial and legal exhaustion. This surely cannot be the result the Federal Circuit believes best achieves the fair and just administration and adjudication of the patent laws of the United States.[5]

Worries such as the foregoing are particularly acute in the patent context because there exists no traditional statute of limitations for a patent infringement cause of action, nor is laches an available defense. *See SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 961 (2017). Rather, patent holders are

---

[4] The Court uses "subject matter" in this context to refer to the problem the inventor seeks to solve. XY's patents, for example, seek to solve the problem of how to ensure the gender of non-human mammalian offspring.

[5] Concerning patents that issue after the complaint is filed, the potential for mischief is not substantially lessened if there can be no consideration whatsoever for *when*, precisely, that patent issues.

constrained by 35 U.S.C. § 286, which establishes, among other things, that "no recovery shall be had for any [patent] infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." Thus, there is no "discovery rule" that might put a patent holder on inquiry notice, causing an infringement claim to accrue and requiring that the patent holder file a lawsuit within a certain amount of time. *See SCA Hygiene*, 137 S. Ct. at 962. By waiting to file a lawsuit, the patent holder sacrifices only the damages that fall outside of the six-year lookback period.

Given all this, the Court holds that after-acquired claims, at least when they address the same, or substantially the same, subject matter as previously filed claims and when directed at a previously accused product or process, may be subject to claim preclusion under the Restatement's pragmatic approach endorsed by the Federal Circuit.

Here, the various Restatement considerations lean heavily toward treating XY's infringement claims based on the 422, 265, and 116 Patents as part of the same transaction that prompted the 2012 Lawsuit. In particular, these causes of action are related in time, origin, and motivation as the patents asserted in the 2012 Lawsuit, and they certainly would have been part of a convenient trial unit. As for the 769 Patent, which issued after the 2012 Lawsuit started, the Court agrees under the circumstances that XY had a duty to move to amend (as it had already moved to amend to add an after-acquired claim) given that it would be accusing the same Trans Ova products and processes, and that the 769 Patent was a continuation of a patent already in suit. *See* 769 Patent, col. 1, ll. 6–16 (announcing that the patent is a continuation of U.S. Patent

Nos. 7,771,921 and 7,713,687; both of these patents were litigated in the 2012 Lawsuit).[6]

For these reasons, Trans Ova's Motion to Dismiss will be granted as to XY's Counts II, IV, V, and VI.

      3.    <u>"Not Materially Different" (Counts III)</u>

There is another approach to claim preclusion that could apply even to patent infringement causes of action that could never have been brought during a previous lawsuit because the patent issued too late to be added to the case.  Before explaining this approach, the Court emphasizes a problem of terminology.  Generally in American litigation, "claim" is a one-word substitute for the more precise term "cause of action." This is what "claim" means in the context of "claim preclusion"—it is a doctrine that can preclude a cause of action because that cause of action should have been asserted in an earlier lawsuit.  However, in the patent context, "claim" often has a technical meaning, referring to the enumerated paragraphs at the end of a published patent that describe and define the invention, typically preceded by the phrase "we claim" or "what is claimed is."  In truth, it is these sorts of claims that can be infringed, and not usually an entire patent (unless the defendant happens to infringe every claim within the patent).  In this Part II.B.3, the Court uses the term "patent claim" to refer to the technical meaning of "claim" under patent law.

Claim preclusion can bar an infringement cause of action if the patent claims allegedly infringed in the earlier and later lawsuits are "not materially different."  *Aspex*

---

[6] Federal Rule of Civil Procedure 15(d) would have given this Court discretion as to whether to allow such an amendment, and had this Court denied amendment, the "could have been brought" variety of claim preclusion would not apply.

*Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341 (Fed. Cir. 2012). In such a situation, the later-asserted patent claims "do not create a new cause of action that was not previously available." *Id.*

Trans Ova argues that the 822 Patent, which issued after judgment entered, is "materially indistinguishable from those already litigated [in the 2012 Lawsuit]." (ECF No. 31 at 11.) Trans Ova specifically refers to U.S. Patent No. 7,771,920 ("920 Patent"). (*See* 2012 Lawsuit, ECF No. 113 ¶¶ 61–65.) Claim 1 of the 920 Patent reads as follows:

> A method of sorting cells comprising the steps of:
>
> a. establishing a cell source which supplies viable sperm cells to be sorted;
>
> b. establishing a sheath fluid to create a sheath fluid environment for said viable sperm cells;
>
> c. sensing a property of said viable sperm cells;
>
> d. discriminating between said viable sperm cells having a desired sex characteristic at a rate of at least about 1200 sorts per second; and
>
> e. collecting said viable sperm cells having the desired sex characteristic comprising the step of cushioning said cells from impact with a collection container.

Claim 11 of the 822 Patent,[7] in turn, reads as follows:

> A method of producing at least one sexed embryo comprising:
>
> producing a stream containing sperm cells, wherein the stream comprises sperm cells from a cell source surrounded by sheath fluid, wherein the sheath fluid surrounding the sperm cells includes a citric acid;

---

[7] XY asserts in this lawsuit that Trans Ova "has infringed, and continues to infringe, at least claim 11 of the '822 Patent." (ECF No. 74 ¶ 37.)

> identifying X-chromosome bearing sperm cells and/or Y-chromosome bearing sperm cells in the stream;
>
> collecting X-chromosome bearing sperm cells and/or Y-chromosome bearing sperm cells in at least one collector having a collector fluid which includes a citric acid; and
>
> fertilizing at least one egg with the collected sperm cells to form at least one sexed embryo.

Trans Ova asserts that the only true difference between these patent claims is found in limitation "d" of the 920 Patent, which specifies "a rate of at least about 1200 sorts per second"; but, says Trans Ova, "determination of sort speed was conventional in the art" and is therefore "immaterial and fails to patentably distinguish the inventions." (ECF No. 31 at 13.) XY responds that there are actually two differences worth considering:

> The '822 patent claims "[a] method of producing at least one sexed embryo" and includes an egg fertilization step whereas the '920 patent claims "a method of sorting cells" with no fertilization step. Also, the '822 patent omits the "1200 sorts per second" requirement of the '920 patent. These are material differences. For example, if Trans Ova tried to avoid infringing the '920 patent by using a machine that sorts slower than 1200 sorts/second, Trans Ova can nevertheless infringe the '822 patent, which has no sort speed requirement.

(ECF No. 39 at 11.) Trans Ova replies that neither of these distinctions is material. (ECF No. 41 at 8–9.)

The record before the Court does not permit it to make a ruling at this stage whether the 822 Patent materially differs from the 920 Patent. Accordingly, Trans Ova's claim preclusion challenge to XY's Count III is denied without prejudice to Trans Ova reasserting this argument at a later stage of the case (presumably through a summary judgment motion).

4.    Counts I & XII

Trans Ova makes no preclusion argument against XY's 590 Patent (Count I) or the 559 Patent (Count XII).  Accordingly, Counts I and XII remain for adjudication on the merits.

C.    **Claim Preclusion: Non-Patent Claims (Counts VII–XI)**

XY's Counts VII–XI all focus on Trans Ova's alleged theft of certain XY trade secrets.  Specifically, during the 2012 Lawsuit, XY learned that Trans Ova had "hired a former XY employee named Todd Cox, first as a consultant and later as an employee, to obtain non-sperm sorting flow cytometers and convert them into MoFlo SX sperm sorting flow cytometers using XY trade secret information."  (ECF No. 74 ¶ 14.)  Cox began teaching this process of conversion to Trans Ova employees "[a]fter April, 2009." (*Id.* ¶ 18.)  XY therefore asserts claims for trade secret misappropriation, unfair competition, *quantum meruit*, and unjust enrichment.  (*Id.* at 25–34.)

Trans Ova challenges these claims as precluded by attaching the transcript of Cox's deposition, taken as part of the 2012 Lawsuit on April 9, 2014, in which Cox admits having learned the MoFlo SX conversion process from XY and having taught it to Trans Ova.  (ECF No. 31-10.)[8]  Trans Ova notes that April 9, 2014 was almost twenty-two months before trial and three months before the close of fact discovery. (ECF No. 31 at 14.)

Because the causes of action asserted in Counts VII–XI are not patent-specific,

---

[8] It is not clear that this portion of the Cox deposition would normally be a document the Court could consider in the Rule 12(b)(6) posture.  But XY does not object on this basis.  (*See* ECF No. 39 at 14–15.)  The Court will therefore consider the Cox deposition transcript as part of its analysis.

regional circuit law applies.  *See, e.g.*, *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344,

1348 (Fed. Cir. 2003) (trade secret misappropriation claims "do not present questions

that are intimately involved with the substance of the patent laws"; applying regional

circuit law to the question of whether there was personal jurisdiction for a trade secret

misappropriation claim).  In the Tenth Circuit

> if the plaintiff discovers facts during the litigation that stem
> from the same underlying transaction, it must supplement its
> complaint with any new theories those facts support.  A
> subsequent lawsuit will be allowed only if the facts
> discovered mid-litigation give rise to *new and independent*
> claims, not part of the previous transaction.  Put differently, a
> plaintiff cannot avoid supplementing his complaint with facts
> *that are part of the same transaction* asserted in the
> complaint, in the hope of bringing a new action arising out of
> the same transaction on some later occasion.

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1244–45 (10th Cir.

2017) (citations and internal quotation marks omitted; alterations incorporated;

emphasis in original).  The Tenth Circuit (like the Federal Circuit) endorses the

Restatement approach of determining the scope of the prior transaction "pragmatically,

giving weight to such considerations as whether the facts are related in time, space,

origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or

usage."  *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335

(10th Cir. 1988) (quoting Restatement (Second) of Judgments § 24) (internal quotation

marks omitted).[9]

_____

[9] State preclusion law may apply to Trans Ova's common-law causes of action, but it is
not clear which state's law should govern, and XY makes no argument that any particular state's
law would lead to a different outcome than the Tenth Circuit's test.  The Court will accordingly
analyze all non-patent causes of action under the Tenth Circuit test.

XY asserts that its trade-secret-related claims in this 2016 Lawsuit arise from "a different nucleus of operative facts." (ECF No. 39 at 15.) XY notes that the 2012 Lawsuit centered around the parties' License Agreement, its expiration, and the effect of that expiration both from a contractual and patent-infringement standpoint. (*Id.*) XY says that this 2016 Lawsuit is different because "Trans Ova did not obtain or use the misappropriated trade secrets from XY under the License—it obtained and used the knowledge from a third party after the License expired." (*Id.*)

These distinctions do not address the proper considerations under the transactional approach. One of XY's main arguments in the 2012 Lawsuit (which the jury accepted) was that the License Agreement expired in April 2009—the very same month "[a]fter" which Cox allegedly began teaching the MoFlo SX conversion process to Trans Ova. It is difficult to see how these events were not related in "time, space, origin, or motivation." *Petromanagement*, 835 F.2d at 1335. Moreover, they certainly would have formed "a convenient trial unit." *Id.* Accordingly, the Court finds that Counts VII–XI in this 2016 Lawsuit arose from the same transaction that prompted the 2012 Lawsuit. Because XY failed to seek to amend in the 2012 Lawsuit to add the claims described in Counts VII–XI, those claims are now precluded and will be dismissed. *Lenox*, 847 F.3d at 1244–45.

### III. CONCLUSION

For the reasons set forth above the Court ORDERS as follows:

1.    Trans Ova's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 31), construed as a challenge to the Fourth Amended Complaint (ECF No. 74), is GRANTED IN PART and DENIED IN PART to the following extent:

a.   XY's Counts II, IV, V, VI, VII, VIII, IX, X, and XI are DISMISSED WITH PREJUDICE, and

b.   The motion is otherwise DENIED;

2.   XY's Motion for Leave to file a Surreply to Trans Ova's 12(b)(6) Motion to Dismiss (ECF No. 43) is DENIED AS MOOT;

3.   Given this disposition, claim construction proceedings will no longer embrace the 116, 265, 422, or 769 Patents.  If any party wishes to withdraw or amend any deposition designations in light of this narrowed scope (*see* ECF Nos. 112–14), the party may do so no later than **February 2, 2018**.  Withdrawing or amending deposition designations is in no way a waiver of any objection a party may have to this Order.

Dated this 11th day of January, 2018.

BY THE COURT:

_____

William J. Martinez
United States District Judge