**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00944-WJM-NYW

XY, LLC,
INGURAN, LLC, d/b/a STGENETICS, and
BECKMAN COULTER, INC.,

   Plaintiffs,

v.

TRANS OVA GENETICS, LC,

   Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

   This matter comes before the court on the following:

(1)  Defendant Trans Ova Genetics, LC's ("Defendant" or "Trans Ova") Motion to Supplement Preliminary[1] Invalidity Contentions ("Motion to Supplement") [Doc. 84, filed November 17, 2017];[2]

(2)  Plaintiffs' Motion to Exclude New Invalidity Arguments Under D.C.COLO.LPtR 16(b)(5) ("Motion to Exclude") filed by Plaintiffs XY, LLC ("XY"), Beckman Coulter, Inc. ("Beckman"), and Inguran, LLC d/b/a

---

[1] The Local Patent Rules do not name the first set of Invalidity Contentions, and this court has previously referred to them in this action and others as "Preliminary" Infringement Contentions. The term "Preliminary," however, may leave the (mis)impression that these first set of Invalidity Contentions are necessarily incomplete and require and/or permit amendment. Accordingly, this court now uses "Initial" to refer to this first set of Invalidity Contentions, except when referring to the precise language used by the Parties.

[2] This court uses the convention [Doc. __] to refer to the docket entry number assigned by the court's Electronic Court Filing ("ECF") system. In this case, [Doc. 170] refers to the publicly available, redacted version of Plaintiffs' Motion to Exclude.

1

STGenetics ("ST") (collectively, "Plaintiffs") ("Motion to Exclude") [Doc. 170, Doc. 171, filed May 21, 2018].[3]

These Motions were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated April 19, 2017 [Doc. 17], and the Memoranda dated November 20, 2017 [Doc. 85]; December 11, 2017 [Doc. 99]; and May 22, 2018 [Doc. 172].   This court has reviewed the Motions and related briefing,[4] and has concluded that oral argument will not materially assist in their respective resolutions. Accordingly, based on the record before the court and the applicable legal authority, this court respectfully **RECOMMENDS** that Trans Ova's Motion to Supplement the Preliminary Infringement Contentions be **GRANTED IN PART AND DENIED IN PART** and the Motion to Exclude be **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The background of this action was discussed in the Original Recommendation [Doc. 341], as well as other court orders, *see, e.g.*, [Doc. 164], and therefore the court will

---

[3] With respect to the Motion to Exclude, this Recommendation addresses Count XII of the Fourth Amended Complaint associated with U.S. Patent No. RE46,559 ("the '559 Patent"), and is intended to be considered in conjunction with the Recommendation dated October 2, 2018 ("Original Recommendation") [Doc. 341], Defendants' Objection to that Recommendation dated October 12, 2018 [Doc. 350], and Plaintiffs' Response to the Objection [Doc. 362].  Consistent with the Original Recommendation, [Doc. 170] refers to the redacted, publicly available version of the Motion to Exclude.  This court will refer to that entry for purposes of this Recommendation.

[4] Defendant filed a Motion for Leave to File Reply in Support of Motion to Supplement Preliminary Invalidity Contentions ("Motion for Reply") on December 8, 2017.  [Doc. 98]. Upon review of the briefing, this court granted the Motion for Reply on November 8, 2021, with the expectation that any arguments not appropriately raised on Reply could be disregarded.  [Doc. 487].   *See also Cahill v. American Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) (citing *Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007)) (arguments first raised in a reply brief come too late); *Ulibarri v. City & County of Denver,* 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010) (argument first raised in reply brief may be disregarded).

be focused on the remaining issue that is subject to this Recommendation. On December 6, 2016, XY initiated this action against Trans Ova in the United States District Court for the Western District of Texas, alleging infringement of four patents: (1) United States Patent Nos. 9,145,590 ("'590 Patent"), 7,723,116 ("'116 Patent"), 9,365,822 ("'822 Patent"), and 7,208,265 ("'265 Patent") as well as trade secret misappropriation and unfair competition violations under the Defend Trade Secrets Act and state law. [Doc. 5]. By Amended Complaint, XY then added allegations of infringement of two additional United States Patent Nos. 6,372,422 ("'422 Patent"), and 8,652,769 ("'769 Patent"). [Doc. 6]. On April 5, 2017, the Western District of Texas transferred the action here. [Doc. 1].

Following the transfer of this action to this District, XY filed a Second Amended Complaint adding co-plaintiff Beckman Coulter and an additional patent, United States Patent No. 9,134,220 ("'220 Patent") on April 21, 2017. [Doc. 24]. XY subsequently filed Third and Fourth Amended Complaints without objection from Trans Ova. [Doc. 51, filed July 26, 2017; Doc. 74, filed October 18, 2017]. The Third Amended Complaint added another co-plaintiff, Inguran, an exclusive licensee to the '590, '116, '822, '265, '422, and '769 Patents (referred to collectively with XY and Beckman Coulter, Inc. as "Plaintiffs"). [Doc. 50-1]. The currently operative Fourth Amended Complaint replaced the '220 Patent with a reissued patent, United States Patent No. RE46,559 ("'559 Patent") (collectively with the '590, '116, '265, '422, and '769 Patents, "Patents-in-Suit").[5]

---

[5] The '559 Patent is a reissue of United States Patent No. 9,134,220 ("'220 Patent") that was introduced to this action through the Second Amended Complaint. [Doc. 24]. The Fourth Amended Complaint replaced the '220 Patent with the '559 Patent. [Doc. 73; Doc. 74; Doc. 83]. A reissued patent corrects errors in the original patent, but may not introduce new matter. 35 U.S.C. § 251. In addition, the United States District Court for

Relevant here, on May 5, 2017, this court set a schedule in this case that set deadlines for infringement and invalidity contentions and supporting documentation. [Doc. 35 at 2].  On July 25, 2017, Trans Ova served its Initial Invalidity Contentions on Plaintiffs.  [Doc. 90-1; Doc. 170-2].  Then, on November 17, 2017, Trans Ova filed the instant Motion to Supplement, which was opposed by XY.  [Doc. 84; Doc. 90].  On January 11, 2018, the presiding judge, the Honorable William J. Martinez, dismissed Counts II, IV, V, VI, VII, VIII, IX, X, and XI of the Fourth Amended Complaint under claim preclusion principles.  [Doc. 120].  Specifically, Judge Martinez dismissed the asserted claims of the '116, '265, '422, and '769 Patents with prejudice, leaving the asserted claims of the '590, '822, and '559 Patents at issue.  [Doc. 120].  In light of Judge Martinez's ruling, this court ordered the Parties to submit a Joint Status Report to address, *inter alia*, the status of Trans Ova's Motion to Supplement.  [Doc. 132].  In that Status Report, Trans Ova withdrew its request to supplement its invalidity contentions challenging the '116, '265, '422, and '769 Patents.  [Doc. 133 at 3].  Plaintiffs also withdrew infringement contentions for claims 13–20, 17, 22, 39, 40–46 of the '590 Patent and Trans Ova thus withdrew its invalidity challenges for those claims.  [*Id.* at 2].  Based on the Status Report, this court denied the Motion to Supplement as moot.  [Doc. 134].

Discovery and other pretrial proceedings progressed, including with respect to the '559 Patent which is entitled "Enhancing Flow Cytometry Discrimination with Geometric Transformation," *see, e.g.,* [Doc. 138 at 1].  Trans Ova then filed a Second Motion to Supplement its Initial Invalidity Contentions [Doc. 135, filed February 16, 2018]

---

the Western District of Wisconsin invalidated the sole asserted claim of the '822 Patent, and thus, XY will dismiss the cause of action with respect to the '822 Patent in this action. [Doc. 424 at 2].

seeking to supplement its Initial Invalidity Contentions, and served Supplemental Invalidity Contentions on Plaintiffs, [Doc. 135-1].  By Order dated May 14, 2018, this court permitted the Supplemental Invalidity Contentions, but reserved ruling on whether any proposed amendments between the Initial Invalidity Contentions and Final Invalidity Contentions were supported by good cause.  [Doc. 168].  Trans Ova's Final Invalidity Contentions were served on April 30, 2018.  [Doc. 170-1].  The court also extended the time for Plaintiffs to file the Motion to Exclude to May 21, 2018.  [Doc. 168 at 21–22; Doc. 170].

Plaintiffs originally filed the instant Motion to Exclude on May 21, 2018 that was directed toward certain invalidity contentions associated with two of the Patents-in-Suit, '590 Patent and the '559 Patent.  [Doc. 170; Doc. 171].  While the Motion to Exclude was pending, the presiding judge, the Honorable William J. Martinez issued an Order dismissing the '559 Patent as ineligible subject matter pursuant to 35 U.S.C. § 101 on August 9, 2018.  [Doc. 262].  Thus, when this court issued the Original Recommendation with respect to the Motion to Exclude, it did not include any analysis with respect to the '559 Patent.  *See* [Doc. 341].

Having dismissed all the counts of the operative Fourth Amended Complaint[6] but Counts I and III, Judge Martinez then issued an Order to Show Cause as to why the court should not enter Rule 54(b) judgment on all but those counts so that Plaintiffs could

---

[6] Judge Martinez's August 8, 2018 Order also denied Plaintiffs' Motion for Leave to File a Fifth Amended Complaint.  [Doc. 262].  Count IV, which alleged infringement of the '265 Patent, was dismissed and not subject to appeal.  [Doc. 120; Doc. 408; Doc. 411; Doc. 455 at 11:10–13].  Since the remand of the case, the Parties have also stipulated that Plaintiffs will not sue Defendant with respect to the U.S. Patent No. 9,625,367 ("'367 Patent") and U.S. Patent No. 9,835,541 ("'541 Patent").  [Doc. 441].  Thus, the Fourth Amended Complaint remains operative.  [Doc. 74].

appeal the court's various rulings to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") and stay the remainder of the case. [Doc. 383]. After reviewing the Parties' responses to his Order to Show Cause [Doc. 386, Doc. 387], Judge Martinez entered Final Judgment as to Counts II, IV, V, VI, VII, VIII, IX, X, XI, and XII. [Doc. 389]. Plaintiffs appealed the Final Judgment, including the dismissal of the '559 Patent on § 101 grounds. [Doc. 391].

On appeal, the Federal Circuit reversed the district court's judgment that the asserted claims of the '559 Patent were ineligible under § 101, and vacated the district court's claim-preclusion judgment as to the '116, '422, and '769 Patents. *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323 (Fed. Cir. 2020); [Doc. 408]. On September 8, 2020, the Federal Circuit issued its Mandate [Doc. 411], and the stay was lifted. Thus, there are five remaining Patents-in-Suit: '590 Patent (Count I); '116 Patent (Count II); '422 patent (Count V); '769 Patent (Count VI); and '559 Patent (Count VII).

Relevant here, this court ordered and the Parties filed a Status Report that addressed, *inter alia*, Trans Ova's invalidity contentions. [Doc. 424]. In the Status Report, Trans Ova indicated that it would dismiss the previously asserted "burying" inequitable conduct counterclaim against the '759 and '116 Patents, but would seek to add inequitable conduct as a defense to the '559 Patent and add new prior art to the '116 invalidity analysis. [*Id.* at 18]. It also sought to reinstate the Motion to Supplement [Doc. 84], while Plaintiffs sought to reinstate their arguments with respect to Motion to Exclude [Doc. 170]. *See* [Doc. 424 at 16–20]. Thus, this court now turns to its Recommendation as to the Motion to Supplement, and a supplemental Recommendation as to the Motion to Exclude.

**LEGAL STANDARDS**

**I.      Colorado Local Patent Rules**

As previously discussed, *see, e.g.,* [Doc. 168], the Colorado Local Patent Rules contemplate two sets of Invalidity Contentions.  An initial set of Invalidity Contentions ("Initial Invalidity Contentions") are required early in the case, typically within sixty days of the Scheduling Conference.  *See* D.C.COLO.LPtR 4, 8 and D.C.COLO.LPtR Sched. Ord.  Then, a final set of Invalidity Contentions ("Final Invalidity Contentions") are served in response to a final set of the Infringement Contentions after claim construction.  *See* D.C.COLO.LPtR 16.  A party seeking to amend contentions between the Initial and Final Invalidity Contentions must provide a separate statement of good cause. D.C.COLO.LPtR 16(a)(3), 16(b)(3).  The court notes that the specific language of Local Patent Rule 16(b)(3) only refers to the identification of "additional prior art," but does not address additional invalidity theories.  D.C.COLO.LPtR 16(b)(3).  A party may move to exclude amendments between the Initial and Final Invalidity Contentions on the grounds that good cause for the amendment does not exist.  D.C.COLO.LPtR 16(a)(4), 16(b)(4). A party may not present invalidity theories that are not properly disclosed. D.C.COLO.LPtR 16(b)(2); *Crocs., Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2015 WL 5171332, at *2 (D. Colo. Nov. 8, 2017).

The purpose of the Initial Invalidity Contentions is to facilitate robust disclosure of the Parties' respective positions, as the party asserting infringement is required to respond to the Initial Invalidity Contentions.  *See* D.C.COLO.LPtR 10.  Contentions are intended to ensure that parties "crystalize their theories of the case early in litigation so as to prevent the shifting sands approach" to the case.  *Wyers Prods. Group, Inc. v.*

7

*Cequent Performance Prods., Inc.*, No. 12-cv-02640-REB-KMT, 2015 WL 3494718, at *2 (D. Colo. Jun. 2, 2015) (citation omitted).  As with any pretrial disclosure, Initial and Final Invalidity Contentions are intended to aid the court in the efficient administration of justice, by guiding the parties in framing the appropriate scope of discovery and eliminating unfair surprise.  *Cf. Jama v. City and Cty. of Denver*, 304 F.R.D. 289, 295 (D. Colo. 2014) (observing that mandatory disclosure serves several purposes, including giving the opposing party information about the identification and locations of knowledgeable individuals to determine whether an individual should be deposed during discovery). Accordingly, consistent with its prior Recommendation, *see* [Doc. 341 at 7], this court construes the requirement to show good cause with respect to amendments between the Initial and Final Invalidity Contentions to also include amendment to non-prior art arguments, including invalidity theories based on lack of written description, enablement, and indefiniteness.  This is because a patent's specification and claims do not ordinarily change between the time of the Initial and Final Invalidity Contentions.

## II.    Good Cause

Good cause is not defined by the Local Patent Rules, but the Rules do provide for examples of good cause, e.g., discovery of previously undiscovered information or an unanticipated claim-construction ruling.  *See* D.C.COLO.LPtR 16.  The Federal Circuit has found that "good cause" requires a showing of diligence.  *See O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).  This is consistent with the Tenth Circuit's interpretation of "good cause" under Rule 16(b)(4), which requires a movant to establish that scheduling deadlines cannot be met despite diligent efforts. *See Gorsuch, Ltd. B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir.

2014).  Another judicial officer in this District has recently held that good cause is satisfied when a party seeking to amend infringement contentions demonstrated that the amendment arose from discovery that was not available at the time of the Initial contentions.  *See Brandt v. Von Honnecke*, Civil Action No. 15-cv-02785-RM-NYW, 2018 WL 4385284 (D. Colo. Sept. 14, 2018) (denying Defendant's Motion to Exclude/Strike Plaintiffs' Supplemental Infringement Contentions).

**ANALYSIS**

**I.     Motion to Supplement**

In its Motion to Supplement, Trans Ova seeks to amend its Initial Invalidity Contentions to include additional prior art and additional indefiniteness arguments.  *See generally* [Doc. 84].  But as observed by Plaintiffs in their Response, Trans Ova's Motion to Supplement did not identify any specific amendments that it sought to make.  *See* [*id.*; Doc. 90 at 1].  For the reasons stated in its prior Recommendation [Doc. 341], this court reaffirms its conclusion that the District's Local Patent Rules require good cause to support amendments made to invalidity contentions.  Thus, to the extent that Trans Ova contends that it may freely amend its Invalidity Contentions between the Initial Invalidity Contentions and Final Invalidity Contentions, this court respectfully disagrees that such conclusion is consistent with the spirit and intent of the District's Local Patent Rules. And while this court respectfully agrees that a patent holder may not simply "preemptively challenge a defendant's proposal to supplement its invalidity contentions but rather must move to exclude the amendment after the amended contentions are served," *see* [Doc. 84 at 15], this court observes that a party seeking to amend its Initial Invalidity Contentions should be mindful of the court's consideration of diligence in

determining the appropriate timing for propounding Supplemental Invalidity Contentions.

On Reply, Trans Ova includes, for the first time, its Supplemental Invalidity Contentions.  These additional invalidity contentions include Section 103 (obviousness) arguments based on additional prior art and Section 112 (indefiniteness, written description, and/or enablement) arguments related to the asserted claims of the '136 Patent.  [Doc. 98-1 at 4; Doc. 98-2].  Arguments made for the first time on Reply are generally disregarded.  *See Cahill v. American Family Mut. Ins. Co*., 610 F.3d 1235, 1239 (10th Cir. 2010) (*citing Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007) (arguments first raised in a reply brief come too late)); *Ulibarri v. City & Cty. of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010) (argument first raised in reply brief may be disregarded). There is no explanation as to why Trans Ova could not have provided its proposed Supplemental Invalidity Contentions in its affirmative Motion particularly given its arguments that Plaintiffs were already on notice.  *See* [Doc. 84].  Ordinarily, "[t]o consider evidence or arguments first raised in a reply brief would be manifestly unfair to plaintiff who, under our rules, has no opportunity for a written response and it would also be unfair to the court itself, which, without the benefit of a response to a late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence as a[ ] [ ] court on the adversarial process for sharpening the issues for decision." *Pinnacle Packaging Co., Inc. v. One Equity Partners (Eur.) GmbH*, No. 12-CV-537-JED-TLW, 2016 WL 6638621, at *1 (N.D. Okla. May 4, 2016) (internal quotation marks omitted) (citing *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994)).  However, given the lack of clarity of the appropriate procedure for considering supplementation and of the applicable standards, this court finds that it is consistent with

the principles set forth in Rule 1 of the Federal Rules of Civil Procedure to consider whether the proposed amendments are supported by good cause.[7]

**'116 Patent.**   Trans Ova seeks to supplement its prior art-based invalidity contentions with argument and evidence set forth in its requests to the United States Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board ("PTAB") for *inter partes* review ("IPR"),[8] IPR Requests IPR2018-00247 and IPR2018-00248 and supporting exhibits.  [Doc. 98-2 at 4].  In doing so, Trans Ova "does not attach duplicate copies herewith."  [*Id.*].  Failure to do so, however, is fatal to its attempt to amend its invalidity contentions in this action as this court has no basis to consider whether amendment to include these additional arguments and references in this action after the filing of the Initial Invalidity Contentions are supported by good cause.  Indeed, while both IPR Requests IPR2018-00247 and IPR2018-00248 and supporting exhibits, as well as the PTAB's decisions, are publicly available, this court declines to speculate as to any good cause arguments, particularly given that Trans Ova has been represented by able counsel since the inception of this action.  *See United States v. Davis*, 622 Fed. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).  In addition, given the ruling of the PTAB as to IPR2018-00248, the invalidity arguments related to claims 42–59, 65–67,

---

[7] The court does not address the arguments with respect to the '265 Patent, as it has been dismissed from this action.  [Doc. 120; Doc. 455 at 11:11–12].

[8] An IPR is an administrative procedure that allows private parties to challenge previously issued patent claims in an adversarial process before the USPTO that mimics civil litigation.  *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1352, 200 L. Ed. 2d 695 (2018).

and 69 of the '116 Patent are moot, given the PTAB's cancellation of those claims and their corresponding withdrawal in this action.  *See* [Doc. 454 at 2 (citing Doc. 454-1)].

With respect to Trans Ova's arguments regarding the lack of written description and/or enablement, this court notes that Trans Ova's arguments are not actually new. Instead, Trans Ova's supplements appear to simply be rebuttals to XY's responses.  *See* [Doc. 98-2 at 5].    Thus, consistent with the principles articulated in the Original Recommendation, *see* [Doc. 341 at 12], this court finds that good cause is not necessary to support Trans Ova's supplementation of lack of written description and/or enablement arguments with respect to the '116 Patent.  Thus, this court respectfully **RECOMMENDS** that the Motion to Supplement as to the '116 Patent be **GRANTED** insofar as it relates to Trans Ova's lack of written description and/or enablement arguments and **DENIED** as to any other arguments.

**'769 Patent.**    Trans Ova also seeks to supplement its prior art-based invalidity contentions as to the '769 Patent with its IPR request, IPR 2018-00250.  [Doc. 98-2 at 5].  As with the IPR requests associated with the '116 Patent, Defendant elected not to include a copy of IPR 2018-00250, which precludes this court from finding good cause. *See supra*.  In addition, the court may take judicial notice of PTAB filings. *See CANVS Corp. v. United States*, 118 Fed. Cl. 587, 591 n.3 (2014) (citing Fed. R. Evid. 201(b)(2), (c)(1) (judicial notice); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 497 n.1 (Fed.Cir.1997) (PTAB filings)).    This court takes judicial notice of the PTAB's Final Decision that Trans Ova "has not proven by a preponderance of the evidence that claims 1–16 [of the '769 Patent] are unpatentable."  *See Trans Ova Genetics, LC v. XY, LLC*, No. IPR2018-00250, 2019 WL 2621923, at *10 (P.T.A.B. June 26, 2019).    Thus, it

appears that Trans Ova is estopped from raising those (and potential other) invalidity arguments based on printed publications in this action pursuant to 35 U.S.C. § 315(e)(1) ("The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review.").

As to Trans Ova's supplemental contentions that the asserted claims of the '769 Patent are invalid based on indefiniteness, Trans Ova directs this court to its Opening Claim Construction Brief and supporting declarations and exhibits.  [Doc. 98-2 at 5–6]. As an initial matter, the Federal Rules of Civil Procedure do not contemplate such incorporation by reference.  Rule 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c).  A pleading is defined as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."  Fed. R. Civ. P. 7(a). Under the plain language of Rule 10(c), incorporation by reference only extends to incorporating matters in the context of a pleading. Trans Ova does not cite (nor could the court find) any authority that extends Rule 10(c) to incorporation of a prior brief into a later filing.  Even if this court looks to Trans Ova's Opening Claim Construction brief [Doc. 91], there is no articulation of good cause.  Thus, this court respectfully **RECOMMENDS** that Trans Ova's Motion to Supplement as to the '769 Patent be

**DENIED**.

**'590 Patent**.  With respect to Trans Ova's supplemental contentions based on the lack of written description and/or enablement of the '590 Patent, consistent with its Original Recommendation, this court is not persuaded – particularly given the prior litigation – that Trans Ova could not have developed its supplemental arguments with respect to written description, enablement, and indefiniteness as to "light emission material," "between about 5 micrometers and about 10 micrometers," "fluid stream generator," "flow cytometer," "particle differentiation apparatus," or "particles" prior to the deadline for the Initial Invalidity Contentions.  *See* [Doc. 341].  As to the supplemental arguments related to "capable of altering an operating voltage," "range of nearly 0 volts to below 400 volts," and "analyzer," this court would permit such arguments to go forward because they are not appropriately considered "new."  *See* [*id*.].  Finally, as to Trans Ova's new lack of written description, enablement and/or indefiniteness arguments based on "droplet generator" or "stain," this court observes that such arguments primarily rely upon and can be developed from information on the contents of the patent and its prosecution history itself, rather than a search for prior art that might reasonably develop as discovery progresses.  *See Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (observing that a patentee's written description must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed); *In re Cortright*, 165 F.3d 1353, 1356 (Fed. Cir. 1999) (observing that lack of enablement results when the patent's specification fails to disclose to one ordinarily skilled in the art how to use the invention without undue experimentation); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37

(2014) (holding that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention").  While this court does not subscribe to a viewpoint that all supplemental arguments based on § 112 are per se precluded, *see* [Doc. 341 at 14], this court is not persuaded that Trans Ova has established good cause to support amendment.  Thus, this court respectfully **RECOMMENDS** that Trans Ova's Motion to Supplement as to the '590 Patent be **GRANTED** as to "capable of altering an operating voltage," "range of nearly 0 volts to below 400 volts," and "analyzer," and **DENIED** in all other respects.

**'559 Patent.**[9]  Trans Ova's proposed supplementation of its invalidity contentions with respect to the '559 Patent arise from additional arguments with respect to the lack of written description and/or enablement.  [Doc. 98-2 at 11–12].  In comparing the Initial Invalidity Contentions based on the lack of written description and/or enablement [Doc. 90-1 at 28–31] with its Supplemental Invalidity Contentions [Doc. 98-2 at 11–12], this court concludes Trans Ova originally articulated its written description and enablement arguments broadly enough to include the arguments reflected in its Supplemental Invalidity Contentions such that these additional arguments are not sufficiently "new" to require a showing of good cause.  Thus, this court respectfully **RECOMMENDS** that Trans Ova's Motion to Supplement as to the 559 Patent be **GRANTED**.

**'422 Patent.**  Trans Ova also seeks to supplement its prior art-based invalidity contentions as to the '422 Patent with its IPR request, IPR 2018-00249.  [Doc. 98-2 at

---

[9] Though identified as contentions associated with the '220 Patent, this court identifies this section using the '559 Patent because amendments to the invalidity contentions associated with the '220 Patent are now applicable to the '559 Patent.

16].  As with the IPR requests associated with the '116 Patent, Defendant elected not to include a copy of IPR 2018-00249, which precludes this court from finding good cause.[10] *See supra*.

With respect to Defendant's supplemental arguments that the asserted claims of the '422 Patent are invalid as lacking written description support, *see* [Doc. 98-2 at 17–18], this court is not persuaded that Trans Ova has established its diligence in identifying these contentions.  As discussed above, arguments arising from lack of sufficient written description and/or enablement can generally be ascertained from the four corners of the patent itself.  *Ariad*, 598 F.3d at 1351; *In re Cortright*, 165 F.3d at 1356.  Thus, this court respectfully **RECOMMENDS** that Trans Ova's Motion to Supplement as to the '422 Patent be **DENIED.**

## II.    Motion to Exclude:  Supplemental Recommendation

As discussed above, this court's Original Recommendation [Doc. 341] analyzed Plaintiff's Motion to Exclude as to the '590 Patent.    Thus, this Supplemental Recommendation is limited to considering the arguments made in the Motion to Exclude as to the '559 Patent, the reissue of the '220 Patent.  In its Final Invalidity Contentions, Trans Ova argues that claims 1, 3–4, 7–8, 12–16, and 18–21 of the '559 Patent are anticipated by the manufacture, use, public disclosure, sale, or offer for sale of the Summit software with CyTrack, versions 3.1, 3.2, 3.3, 3.3.1, or 4.0, that was manufactured and sold by the predecessor of Beckman.  [Doc. 170-1 at 18–19, 23–24].  Defendant further contends that earlier versions of the Summit software were described

---

[10] It is not clear to this court what was the outcome of IPR2018-00249 or whether any such outcome would have preclusive effects upon Defendant's invalidity printed-publication prior art arguments in this action.

in a printed publication, the Hollinshead Thesis, bearing a copyright date of October 2003, before the earliest invention date of the asserted claims of '559 Patent in 2004. [*Id.* at 19–23].  Trans Ova also identifies two articles from James Leary.  [Doc. 170 at 5; Doc. 170-1 at 23–26].  Finally, Trans Ova asserts additional bases for lack of written description and enablement as to four terms:  "at least n detectors" (Claim 1); "at least two populations of particles" (Claim 1); "to cause a display device to display the n-dimensional parameter data" (Claims 13–14); and "to cause the display device to display: (a) the first signal on a first axis; and (b) the second signal on a second axis" (Claim 15).  [Doc. 170-1 at 26–28; 170 at 6].

Plaintiff moves to strike these additional contentions, arguing that there is no good cause to support them.  [Doc. 170; Doc. 171].  Specifically, XY contends that Trans Ova has long been aware of the Summit software and its relationship to this case, as evidenced by discovery responses and the stipulation of infringement, but did not include them in its Initial Invalidity Contentions.[11]  [Doc. 170 at 8].  Plaintiff argues that it thus follows that Trans Ova has failed to demonstrate diligence as to raising its new anticipation arguments with respect to the Summit software as well as the Hollinshead Thesis that refers to some unidentified version of Summit.[12]  [*Id.* at 8–10].  Similarly, Plaintiff contends that Trans Ova's obviousness arguments based on the two Leary

---

[11] The Initial Invalidity Contentions were directed, *inter alia*, at the '220 Patent, of which the '559 Patent is a reissue.  This court construes the Initial Invalidity Contentions directed at the '220 Patent as equally applicable to the '559 Patent.

[12] XY further contends that any amendment is futile because these pieces of prior art cannot be anticipatory because of their relationship to the inventors of the '559 Patent. This substantive argument appears misplaced in the context of this instant Motion to Exclude, which is focused on whether Trans Ova has demonstrated good cause to deviate from its Initial Invalidity Contentions in its Final Invalidity Contentions, not whether the invalidity arguments will be ultimately successful.

references are precluded because there is no good cause as to why these references were not identified in the Initial Invalidity Contentions.  [*Id*. at 13–14].   XY further contends that Trans Ova's additional invalidity arguments based on flaws in the written description or enablement of the '559 Patent lack good cause because such arguments are based on the '559 Patent itself, and were not triggered by any discovery including but not limited to the deposition of Ryan Christensen, Inguran's Chief Intellectual Property Counsel.  [*Id*. at 11–12].

In support of these additional invalidity arguments and in opposition to the Motion to Strike, Trans Ova argues that it has been diligent in adding these bases for invalidity; the need for input from technical experts; and the timing of the assertions of infringement related to the '541 and '367 Patents.  [Doc. 170-3; Doc. 185].  In doing so, Trans Ova argues that patent defendants cannot "reasonably be charged with having perfect knowledge of all *discoverable* prior art or the ability to immediately discern every invalidity position."  [Doc. 185 at 8 (emphasis in original)].  Specifically, Defendant contends that its supplementation of its written description and enablement positions are not "new," but rather simply expand upon the arguments already made by Trans Ova. In addition, as to the two additional Leary references from 2001 and 2002, Trans Ova contends that it only became aware of those references after its technical expert reviewed the '541 and '367 Patents and then promptly supplemented its invalidity contentions in February 2018 to reflect them.  [Doc. 185 at 10–11].  Trans Ova similarly contends that XY never disclosed either "What's New in v.3.1" document that suggested that even pre-4.0 versions of Summit could perform the claimed "rotate," "scale," and "translate" features of the '559 patent or the Hollinshead thesis – despite the connection

between XY and Beckman to such documents.  [*Id.* at 12–13].  Finally, Trans Ova contends that Plaintiffs have had a full and fair opportunity to respond to all the invalidity arguments and examine Trans Ova's expert on them.  [*Id.* at 13].

On Reply, XY argues that Trans Ova improperly focuses upon its diligence in disclosing new invalidity arguments after their identification but has not shown diligence in identifying additional invalidity arguments.  [Doc. 207 at 4–5].

Though this court found no specific authority as to what constitutes diligence in support of good cause in the context of supplementation of invalidity contentions, in analogous contexts, this District has found that good cause must be supported by the articulation of "specific facts that demonstrate: (i) a new fact or change in circumstance since the [the original filing] that requires a change in position, (ii) appropriate diligence in attempting to ascertain the existence of the facts affecting the theory or claim before the [original filing], and (iii) that the new fact or change in circumstance could not reasonably have been anticipated at the time of the [original filing]."  *Sentegra, LLC v. Asus Computer Int'l*, No. 16-cv-00132-MSK, 2016 WL 11693773, at *1 (D. Colo. Aug. 4, 2016) (finding no good cause to permit modification of the asserted patent claims).  Thus, this court tends to agree with XY that "[a] proper showing of diligence requires providing details about specific search efforts that were undertaken in framing invalidity contentions."  [Doc. 207 at 4].

***Summit Software***.  Trans Ova focuses upon its diligence upon the discovery of the prior art.  [Doc. 185 at 13].  As noted above, Trans Ova does not dispute that it knew of the Summit software well before the deadline for Initial Invalidity Contentions, but argues that it did not have information regarding Beckman's predecessor's disclosure

and sale of versions of the software embodying the '559 Patent before the patent's effective filing date. [*Id.*].

First, to Trans Ova's point that the Local Patent Rules do not require perfect prescience, this court finds that the number of asserted patent claims is a factor, though not dispositive, that the court should consider when determining whether a party could not reasonably have anticipated the invalidity argument.   But the court respectfully disagrees with Trans Ova's premise that diligence after discovery (regardless of whether a party was diligent in uncovering the prior art) is sufficient.   The very purpose of the Initial Invalidity (and Infringement) Contentions is to require the parties to come forward with their respective arguments toward the beginning of the action so that discovery and other pretrial matters may proceed in an efficient and orderly fashion – much like Initial Disclosures under Rule 26(a)(1).   *Cf. United States v. Hopkins,* No. 11-CV-0416 JB/SMV, 2012 WL 7829995, at *4 (D.N.M. Dec. 28, 2012), *report and recommendation adopted*, No. CIV 11-0416 JB/WPL, 2013 WL 684650 (D.N.M. Feb. 11, 2013) ("'A major purpose' of initial disclosures 'is to accelerate the exchange of basic information about the case and to eliminate the paperwork involved in requesting such information.' Thus, it makes sense that the Federal Rules would penalize parties for failing to make their initial disclosures and necessitating formal requests and perhaps even court intervention." (citing Fed. R. Civ. P. 26 advisory committee's note to 1993 amendments)).

While the court accepts the representations of counsel – as officers of the court – with respect to the course of discovery as true, the evidence in the record reflects that "[w]hen Trans Ova bought their very first MoFlo, and when anybody buys a MoFlo or MoFlo SX, DakoCytomation provides them with a preloaded computer and with an

additional backup CD in case the preloaded computer should go down." [Doc. 207-2 at 68:2–9]. And Todd Cox, Trans Ova's former technical services manager, testified that for each of the MoFlo SXs he built for Trans Ova, he used the original backup CD that Trans Ova obtained from its very first MoFlo XS sorter purchase that was before 2007. [*Id.* at 68:10–25]. Further, as of April 21, 2017, Plaintiffs had identified the use of the Summit software as "capable of rotationally altering data, to sort sperm cells on the MoFlo SX instruments made by TOG," and as infringing at least claim 1 of the '220 Patent. [Doc. 24 at ¶ 99]. The claims of the '220 Patent and the '559 Patent are identical. [Doc. 74 at ¶ 102; Doc. 75 at 13 ¶ 102]. There is no assertion, let alone evidence, by Trans Ova to suggest that it could not have developed its argument with respect to the Summit software from the information contained on the backup CD. And Plaintiffs' arguments with respect to lack of prejudice do not establish good cause. *Cf. Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (observing, in the context of good cause of amending a scheduling order, that although "the existence or degree of prejudice to the party opposing the modification might supply underline additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification" (emphasis added) (citation omitted)). Based on this record, this court finds that Trans Ova has not carried its burden of establishing good cause in support of its amendment with respect to the Summit software. *Cf. Colorado Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 688 (D. Colo. 2000) (finding that, in the context of good cause for amending a scheduling order, "failure earlier in the case to do the research necessary to recognize the applicability of the defense they seek to add" did not satisfy good cause).

*Leary References.*   This court is similarly not persuaded that Trans Ova exercised the requisite diligence in identifying the two additional Leary References, Leary 2001 and Leary 2002.  Trans Ova concedes that the '541 and '367 Patents have "near identical overlap in scope" with the '559 Patent.  [Doc. 185 at 10].  Trans Ova further admits that the '559 Patent and the '220 Patent share the same claims.  [Doc. 74 at ¶ 102; Doc. 75 at 13 ¶ 102].  The '220 Patent has been part of this action since the filing of the Second Amended Complaint on April 21, 2017.  As discussed above, Trans Ova's diligence since the discovery of the Leary 2001 and Leary 2002 references is not dispositive, and Trans Ova simply offers no explanation as to why it (or its expert, J. Paul Robinson, Ph.D) could not have identified these references prior to its Initial Invalidity Contentions – particularly given that it appears that Dr. Robinson was an invalidity expert for Trans Ova in the prior case, *XY, LLC v. Trans Ova LC*, Case No. 13-cv-00876-WJM-NYW, [ECF No. 301 at 20, 47].

*Hollinshead Thesis.*   However, the court does not draw the same conclusion as to the Hollinshead Thesis.  There is no argument from Plaintiffs about the Hollinshead Thesis in their Reply that Trans Ova had access to it prior to its Initial Invalidity Contentions or that the Hollinshead Thesis was easily ascertainable.  *See generally* [Doc. 207].  Without reaching the merits of whether the Hollinshead Thesis will ultimately be determined to be invalidating prior art, the Federal Circuit has recognized that student theses may present issues of asymmetrical knowledge.  *Cf. Centripetal Networks, Inc. v. Cisco Sys., Inc.,* 847 F. App'x 869, 878 (Fed. Cir. 2021), cert. denied, No. 21-193, 2021 WL 4508660 (U.S. Oct. 4, 2021) (observing that "the only people who knew how to find the student thesis [were] the ones who created it") (internal quotation marks

omitted).  By extension, finding student theses may present challenges beyond finding other prior art.  In light of Trans Ova's representation that Plaintiffs had not produced the Hollinshead Thesis despite XY's inventor Mike Evans being prominently cited and thanked throughout it, *see* [Doc. 185 at 12], and the lack of rebuttal to this assertion by Plaintiffs, [Doc. 207], this court finds good cause to support this amendment.

*Written Description/Enablement.*  Consistent with its determination above, this court finds that Trans Ova's lack of written description and/or enablement contentions with respect to the '559 Patent are not sufficiently "new" to require a showing of good cause.  *See supra* p. 14.

Accordingly, this court supplementally **RECOMMENDS** that the Motion to Exclude be **GRANTED IN PART and DENIED IN PART**.

## CONCLUSION

 For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)     Defendant Trans Ova Genetics, LC's Motion to Supplement Preliminary Invalidity Contentions be **GRANTED IN PART and DENIED IN PART**;

(2)     Plaintiffs' Motion to Exclude New Invalidity Arguments Under D.C.COLO.LPtR 16(b)(5) be **GRANTED IN PART and DENIED IN PART** as to the '559 Patent; and

(3)     To the extent the presiding judge, the Honorable William J. Martinez, finds that any of the invalidity arguments should be stricken, Trans Ova be **ORDERED** to file Amended Final Invalidity Contentions no later than fourteen (14) days after Judge

Martinez's Order.[13]

DATED:  November 29, 2021                    BY THE COURT:

                                             _____
                                             Nina Y. Wang
                                             United States Magistrate Judge

---

[13] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).