IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0944-WJM-MDB

XY, LLC;
BECKMAN COULTER, INC.;
INGURAN, LLC d/b/a ST GENETICS,

    Plaintiffs,

v.

TRANS OVA GENETICS, LC,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
TRANS OVA GENETICS, LC'S MOTION TO STRIKE PORTIONS
OF PLAINTIFFS' SUBSTITUTE DAMAGES EXPERT REPORT**

---

This matter is before the Court on Defendant Trans Ova Genetics, LC's ("TOG" or "Defendant") Motion to Strike Portions of Plaintiffs' Substitute Damages Expert Report ("Motion"). (ECF No. 671.) Plaintiffs XY, LLC ("XY"), Beckman Coulter, Inc., and Inguran, LLC d/b/a St Genetics ("ST"), filed a response (ECF No. 675), to which TOG filed a reply (ECF No. 679). At the Court's direction the parties also filed supplemental briefs addressing their positions on the scope of any additional limited expert discovery TOG should be permitted to take to mitigate the prejudice it asserts in the Motion. (ECF Nos. 687, 689; *see also* ECF No. 683 (June 17, 2025 Order directing same).)

For the reasons stated below, the Court declines to strike the opinions of Plaintiffs' substitute damages expert, Gary L. Gutzler, and in that regard the Motion is

denied. However, the Court will permit both TOG and Plaintiffs to take further *limited* expert discovery to address the issues raised in the parties' supplemental briefs, as set forth in further detail below.

## I. DISCUSSION

In August 2024—well after the close of discovery but before the current trial date in this case had been set—Plaintiffs informed TOG that their previously retained damages expert, Daniel L. Jackson, was unable to continue as Plaintiffs' expert due to health issues. (ECF No. 672-1 at 4; *see also* ECF No. 550 (setting fact discovery deadline in June 2023 and expert discovery deadline in October 2023); ECF No. 658 (Oct. 8, 2024 Status Conference to set trial date).) Over the next several months, the parties negotiated an amended case schedule setting forth agreed deadlines for Plaintiffs' service of a substitute damages expert report and further discovery and motions practice necessitated thereby. (ECF Nos. 663, 665.)[1]

The dispute currently before the Court arises from the parties' agreed procedure for challenging the scope of the new damages expert reports via motions to strike. (*See* ECF No. 666 at 2–3.) Notwithstanding its previous agreement to Jackson's substitution, TOG asks the Court to strike Gutzler's opinions on the grounds they materially—and thus, prejudicially—depart from Jackson's. (*See generally ECF* No. 672-1.) In addition, by way of its supplemental brief, TOG asks the Court for relief related to its own damages expert's reliance on newly disclosed documents produced in conjunction with his substitute rebuttal report.[2] (*See generally* ECF No. 688-1.)

---

[1] The Court entered the parties' joint proposed schedule without material change in March 2025. (ECF No. 666.)

[2] TOG acknowledges that this request is technically separate from the Motion, and the

2

The Court declines to strike any portion of either Gutzler's substitute opinions or TOG's expert's rebuttal opinions at this time. However, to finally settle the discovery issues flowing from Jackson's substitution, the Court finds that a *limited* reopening of expert discovery will cure the prejudice asserted by both parties.

## A.   TOG's Motion to Strike Gutzler Opinions

Gutzler opines in his substitute damages report that, in a hypothetical negotiation between the parties, they would have agreed to a licensing structure with two components: (1) an upfront payment and (2) running reasonable royalties for each of the Asserted Patents. (*See generally* ECF No. 672-2.) Jackson's original damages opinion was based on this same general framework—that is, it consisted of both an upfront payment and reasonable royalties. (*See generally* ECF No. 602-2.) And, as TOG acknowledges, both experts ultimately "arriv[ed] at roughly the same overall damages total . . . ." (ECF No. 672-1 at 4.)

Nevertheless, TOG argues that Gutzler employed an entirely different methodology than Jackson to calculate the upfront payment and reasonable royalty rates, and it thus asks the Court to strike his opinion as to both components. The Court disagrees that such a drastic measure is warranted here. However, it will grant TOG leave to take the additional, limited technical expert discovery it seeks to cure the prejudice it asserts in the Motion.

Although "[s]ubstitution of an expert near the commencement of trial is permissible when, for all intents and purposes, that expert becomes unavailable"—a

---

Court agrees. (ECF No. 688-1 at 1 n.1.) In the interest of expeditiously resolving all issues potentially necessitating the limited reopening of expert discovery, however, the Court exercises its discretion to take up the issue now.

3

threshold matter TOG does not contest here—"the substitution of a new expert should not be a 'windfall' for the proponent of that witness." *Al-Baaj v. Bennett,* 2021 WL 6339611, at *1 (D. Colo. Sept. 24, 2021) (internal citation omitted). To prevent this result, substitute experts generally "cannot meaningfully change their testimony from that of the previous expert." *Stratton v. Thompson/Center Arms, Inc.,* 608 F. Supp. 3d 1079, 1088 (D. Utah 2022); *see also Baumann v. Fam. Mut. Ins. Co.,* 278 F.R.D. 614, 616 (D. Colo. 2012) ("Assuming there is no 'meaningful change in testimony,' Defendant will suffer little prejudice." (internal citation omitted)).

This does not mean, however, that the substitute expert's opinions must be identical to that of the original expert, *Al-Baaj,* 2021 WL 6339611, at *1 (citing *Ferrara v. DiMercurio v. St. Paul Mercury Ins. Co.,* 240 F.3d 1, 10 (1st Cir. 2001)), nor that the substitute expert is "required to regurgitate verbatim the proposed testimony of [the original expert]," *Stratton,* 608 F. Supp. 3d at 1088. To the contrary, "[a] party is not materially prejudiced by an opinion that merely departs from the general scheme or only expands the scope" of the original expert's report. *Al-Baaj,* 2021 WL 6339611, at *1 (citing *Ferrara,* 240 F.3d at 10). But "[i]f a replacement expert uses new methods that the original expert did not use, testimony arising from those methods are typically precluded." *Stratton,* 608 F. Supp. 3d at 1088.

Here, TOG argues—in simplest terms the Court can muster—that Jackson and Gutzler's methodologies differ because, whereas Jackson relied upon various "qualitative" and "quantitative considerations" to arrive at a value for the upfront payment, Gutzler calculated the upfront payment by applying a direct multiplier to the alleged exclusivity payment ST paid to XY in connection with their 2004 Lead License

4

Agreement. (ECF No. 672-1 at 10; *see also* ECF No. 602-6 at ¶¶ 197–208; ECF No. 672-2 at ¶ 203.) Similarly, TOG argues that—although both experts were at least nominally guided by the *Georgia-Pacific* factors—whereas Jackson considered "various points of evidence" to arrive at a reasonable royalty rate for each of the Asserted Patents, Gutzler derived his reasonable royalty rates "directly from alleged technical efficiency improvements identified by Dr. Nolan," Plaintiffs' technical expert—resulting in royalty rates three to six times higher than Jackson's rates.. (*Id.* at 672-1 at 10; ECF No. 602-6 at ¶¶ 239; ECF No. 672-2 at ¶ 205.) In short, TOG argues that because none of the quantitative data points Jackson considered bore a direct mathematical relationship to his assessment of an upfront payment or reasonable royalty rates, Gutzler's more mathematical approach amounts to a new method.

The Court, however, is unconvinced. Notably, neither ST's 2004 exclusivity payment nor Dr. Nolan's technical efficiency opinions are entirely novel data points. Jackson, too, considered that "ST would not lightly give up the exclusivity it paid for in 2004," even if the *value* of that payment did not figure in his evaluation of an upfront payment. (ECF No. 602-6 at ¶ 218.) Moreover, Jackson also considered "the technical opinions from Dr. Nolan" in determining a royalty rate for the Asserted Patents. (ECF No. 602-6 at ¶ 239.) The Court is skeptical that the limitations on substitute experts require that Gutzler afford equivalent *import* to these data points in his analysis. TOG has not cited any authority where a court found that the opinions of a substitute expert in a patent case should be excluded because they weighed various data points and/or *Georgia-Pacific* factors in a different manner than the original expert. To the contrary, one of the authorities cited by TOG suggests that a substitute damages analysis

5

generally guided by the *Georgia-Pacific* factors is sufficiently similar.  *See, e.g., Lincoln Nat. Life Ins. Co. v. Transam. Financial Life Ins. Co.,* 2010 WL 3892860, at *3 (N.D. Ind. Sept. 30, 2010) (observing in patent case that plaintiff's substitute damages expert would be "required to employ the same general methodology as [the original expert]—that is, a damages calculation that is based on the factors set forth in *Georgia Pacific Corp. v. U.S. Plywood Co. . . . .*").

Were the Court to conclude otherwise under the circumstances, it would be effectively depriving Plaintiffs of *any* damages expert.  Although TOG titles the Motion as one seeking to strike "portions" of Gutzler's report, the opinions it seeks to strike are, as explained above, the two fundamental components of Gutzler's ultimate damages opinion.  The parties would thus be placed back in the position they were in nearly a year ago, when Plaintiffs first informed TOG that Jackson was unable to continue as their expert.  *Cf. Ferrara.,* 240 F.3d at 10 (1st Cir.2001) (finding no prejudice arose from substituting an expert where, among other reasons, the plaintiff had notice of the new designation more than three months before the trial and did not move to continue the trial).  Obviously, this result would substantially prejudice Plaintiffs—and it is a difficult outcome for the Court to swallow in light of TOG's agreement to amend the case schedule to permit Plaintiffs to substitute their damages expert to avoid that very outcome.  For that reason, the Court declines to strike Gutzler's damages opinions.

Nevertheless, the Court is receptive to TOG's argument that Plaintiffs' expert substitution deprived it of an equal opportunity to tailor its technical discovery strategy to any interrelated damages opinions.  But this prejudice is curable.  TOG asks the Court for leave to (1) take a two-hour deposition of Dr. Nolan, limited in scope to paragraphs

6

41 and 56–57 of Dr. Nolan's 2018 report, and paragraphs 88–94 of Dr. Nolan's 2023 report; and (2) "serve a supplemental rebuttal expert report addressing the improved efficiency opinions," which the Court understands to mean a supplemental rebuttal report from TOG's *technical* expert, Dr. Robinson.  (ECF No. 688-1 at 5.)

Plaintiffs have agreed to make Dr. Nolan available for the deposition TOG requests, and the Court will also grant Plaintiffs request that such deposition take place remotely.  (*See* ECF No. 689 at 6–7.)  However, Plaintiffs oppose TOG's request for leave to serve a supplemental rebuttal technical expert report, including because Dr. Robinson already addressed Dr. Nolan's opinions in both his 2018 and 2023 rebuttal reports and TOG has consistently refused to provide specific parameters for the supplemental report, including page or word count limits.  (*Id.* at 5–6.)

The Court shares Plaintiffs' concern that TOG has provided little detail as to what additional technical opinions it believes it needs from Dr. Robinson, even at the Court's invitation to describe the discovery it needs to mitigate any prejudice it believes it has suffered as a result of Jackson's substitution.  The most specific description the Court can identify in any of TOG's briefing is that, "[h]ad TOG known that XY's expert intended to convert technical efficiency percentages directly into royalty rates through a mathematical formula, it would have . . . directed Dr. Robinson to conduct detailed quantitative rebuttals."  (ECF No. 680-1 at 7.)

Accordingly, the Court will also permit TOG to serve a supplemental technical expert report limited to these "detailed quantitative rebuttals" contemplated by TOG, which the Court presumes correlate with the same paragraphs of Dr. Nolan's report cited above.  To the extent the parties believe additional parameters as to scope are

7

necessary—for example, page or word count limits—the Court trusts the parties will be able to reach an agreement as to such matters. Plaintiffs are in turn granted leave to depose Dr. Robinson on any new opinions offered via a supplemental report, which shall be similarly limited to two hours in length and may be conducted remotely.[3]

### B. TOG's Request for Relief as to the DAVID Documents

Separately, in its supplemental brief, TOG brings to the Court's attention that, in conjunction with its expert's damages rebuttal report, it produced for the first time certain additional TOG income statements from 2013 to 2023, broken down by product line (the "DAVID Documents"). (ECF No. 688-1 at 2–5; *see also* ECF Nos. 688-3, 688-4, 688-5.) In apparent anticipation of a challenge by Plaintiffs to the late disclosure of these documents, TOG asks the Court to grant it leave to (1) amend its Final Pretrial Order exhibit list to include the DAVID Documents, and (2) issue an Order confirming that David's opinions based on those documents will not be excluded on timeliness grounds. (ECF No. 688-1 at 2.) Because the Court ultimately agrees that any prejudice resulting to Plaintiffs from the late disclosure of the DAVID Documents is curable, it concludes that TOG should be permitted to rely on those documents at trial.

TOG foremost argues that it should be permitted to rely on the DAVID Documents despite their late production because their preparation was necessitated only in response to Gutzler's substitute damages opinions. As pertinent background, TOG explains that the DAVID Documents were created from its accounting system specifically for this litigation—that is, they were not generated in the ordinary course of

---

[3] The Court acknowledges this additional discovery will necessitate other adjustments to the Supplemental Scheduling Order. (ECF No. 666.) In the Conclusion of this Order, the Court directs the parties to confer and submit proposed amendments for the remaining deadlines in the Scheduling Order.

8

business—and they update a similar set of TOG income statements from 2008 to 2013 that TOG produced in the 2013 litigation ("TOG1 Document").  (*Id.* at 3; *see also* ECF No. 688-6.)  TOG represents that David only requested the updated income statements *after* Plaintiffs' service of Gutzler's damages report, in order to evaluate Gutzler's opinion that TOG would have suffered reduced margins from its sexed semen product line, specifically, without the Asserted Patents.  (ECF No. 688-1 at 3–4.)  It further asserts that Plaintiffs will suffer no meaningful prejudice if it is permitted to rely on the DAVID Documents because Plaintiffs have already had an opportunity to depose David regarding the DAVID Documents and "any alleged prejudice could be cured by allowing XY to supplement its expert report, if needed."  (ECF No. 688-1 at 5.)

The Court finds TOG's argument that Gutzler's substitute report increased the relevance of product line-specific financial information to be a reasonable one, given Jackson's damages opinions were previously based on revenues generated by a combination of TOG's services—not only sexed semen production.  Moreover, given TOG's concession that any prejudice to Plaintiffs can be cured by affording Gutzler an opportunity to supplement his report based on his review of the DAVID Documents, the Court agrees that any resulting prejudice to Plaintiffs will be minimal.

Nonetheless, Plaintiffs complain that the DAVID Documents are responsive to information they requested during fact discovery, including an interrogatory asking TOG to "provide, on an annual basis . . . the costs you incurred . . . for your sales of Gender-Selected Sperm and Gender-Selected Reproductive Services"—such that TOG's late disclosure is inexcusable.  (ECF No. 689 at 4.)  But, while the Court acknowledges it is TOG's burden to produce responsive information in its possession, the fact remains that

9

Plaintiffs were also aware that TOG was apparently able to collate financial information substantially in the form of the DAVID Documents, having previously received the TOG1 Document in discovery in the prior litigation.  Indeed, TOG explains that it created the DAVID Documents "from the same account mapping table used to create the TOG1 Document."  (ECF No. 688-1 at 3.)  Thus, while the information is responsive to Plaintiffs' cited interrogatory, given Plaintiffs' familiarity with the work product, the prejudice is, in the Court's view, minimal.

Accordingly, the Court grants TOG's request to amend its Final Pretrial Order exhibit list to include the DAVID Documents.  As a condition to TOG's adding the DAVID Documents to its exhibit list, Gutzler will also be afforded an opportunity to provide a supplemental report based on his review of the DAVID Documents.  However, the Court finds further fact discovery regarding the creation of the documents unnecessary.  While TOG does not indicate in its supplemental brief whether it seeks to depose Gutzler on any new opinions formulated based on his review of the DAVID Documents, the Court finds that allowing such a limited additional deposition of Gutzler to be in the interest of justice.

## II. CONCLUSION

For all the reasons set forth above, Defendant's Motion to Strike Portions of Plaintiffs' Substitute Damages Expert Report (ECF No. 671) is GRANTED IN PART and DENIED IN PART.  Specifically, the Court ORDERS as follows:

1. TOG is granted leave to amend the Final Pretrial Order (ECF No. 638, 670) to supplement its trial exhibit list with the DAVID Documents.

2. By no later than **July 25, 2025,** the parties may serve the following

supplemental expert reports:

  a. A supplemental expert report from Dr. Robinson, limited to Dr. Robinson's "quantitative rebuttals" to Dr. Nolan's technical efficiency opinions set forth in paragraphs 41 and 56–57 of Dr. Nolan's 2018 report, and paragraphs 88–94 of Dr. Nolan's 2023 report; and

  b. A supplemental expert report from Gutzler, limited to his further opinions based on the newly disclosed DAVID Documents.

  3. By no later than **August 8, 2025,** the parties are granted leave to take the following additional depositions, which shall each take place remotely (unless the parties otherwise agree to conduct the deposition in person) and be limited to two hours in length:

  a. TOG may take the deposition of Dr. Nolan, limited in scope to paragraphs 41 and 56–57 of Dr. Nolan's 2018 report, and paragraphs 88–94 of Dr. Nolan's 2023 report;

  b. Plaintiffs may take the deposition of Dr. Robinson, limited in scope to any new opinions disclosed by Dr. Robinson in his supplemental expert report permitted in accordance with paragraph 2(a) above; and

  c. TOG may take the deposition of Dr. Gutzler on any new opinions formulated based on his review of the DAVID Documents.

  4. By no later than **July 16, 2025**, the parties shall file a joint proposed amended supplemental scheduling order setting forth any amendments to the remaining deadlines set forth in the Supplemental Scheduling Order at ECF No. 666. The parties' filing should also address the impact, if any, of the additional discovery permitted

11

pursuant to this Order on the parties' currently pending summary judgment (ECF Nos. 598, 600) and *Daubert* motions (ECF Nos. 596).

5. The parties are expressly advised that the Court will entertain no further requests for fact or expert discovery beyond the foregoing in this case.

Dated this 9th day of July, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge